■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v OSWALDO PATINO, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County (Sherman, J.), rendered April 11, 1980, convicting him of criminal possession of a controlled substance in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review, *inter alia,* the denial, after a hearing, of so much of defendant's pretrial omnibus motion as sought suppression of certain physical evidence. Judgment affirmed. We agree with Criminal Term's determination denying so much of defendant's omnibus motion as sought to suppress certain physical evidence, to wit, a suitcase and its contents. Under the circumstances of this case, there was a sufficient basis for Detective Schmidt to approach defendant at the airport terminal and request him to stop and talk (cf. *People v De Bour,* 40 NY2d 210). Immediately following the detective's request, defendant dropped the suitcase he was then carrying, and exclaimed, "It's not my bag. I don't know what's inside". Such conduct on the part of defendant supports a finding that he abandoned the suitcase and thereafter, Detective Schmidt could properly seize and search it (see *People v Pittman,* 14 NY2d 885; *People v D'Ambrosio,* 28 AD2d 1130; cf. *People v Howard,* 50 NY2d 583, 592, cert den 449 US 1023). Accordingly, suppression of the evidence was not warranted. We have considered the other contention raised upon appeal and find it to be without merit. Damiani, J. P., Mangano and Gulotta, JJ., concur.

Gibbons, J., concurs to affirm the judgment, with the following memorandum: Detective Charles Schmidt was the People's sole witness at the suppression hearing. He testified that on May 29, 1979, he was assigned to the Port Authority Police Department and was working at La Guardia Airport. At about 6:30 P.M. he received a telephone call from Detective Everitt Titus, a police officer in Dade County, Florida. Titus told Schmidt that he was assigned to narcotics patrol at the Miami Airport and that he had just completed a drug "profile" on an individual named Oswaldo Patino (defendant). Patino had paid cash for a one-way ticket to La Guardia on National Airlines flight No. 90,

under the name of Roberto Sassa, and had left a fictitious contact number with the airline. Titus told Schmidt that he had called the number left with the airline but found nobody who knew anything about a person named Patino or Sassa. While defendant was boarding the plane, Titus stopped him, identified himself, and questioned him, at which time defendant produced a New York driver's license with the name "Oswaldo Patino" on it. Titus gave Schmidt a description of defendant and told him that the defendant had checked one piece of luggage. He also indicated to Schmidt his view that defendant's answers were evasive and that he, Titus, suspected that defendant might be carrying contraband. Flight 90 arrived at about 8:30 P.M., at which time Schmidt observed defendant disembark and walk toward the baggage claim area. Defendant claimed a piece of luggage and proceeded to leave the terminal, at which point Schmidt, accompanied by another officer, addressed defendant by saying: "Police; stop. I'd like to talk to you". Defendant dropped the bag behind him and stated: "It's not my bag. I don't know what's inside". Schmidt noted that there were no identifying marks on the outside of the bag and asked defendant for identification. Defendant produced a New York driver's license. Schmidt then directed defendant to the police reserve room, located in the terminal building. With Schmidt carrying the case, the other officer walked behind defendant and the detective. Schmidt acknowledged at the hearing that as of this point defendant was not free to leave. When they reached the room, Schmidt told defendant to sit down and he asked him whether he had a key for the bag. Defendant responded by saying that it was not his case and that he did not have a key. The detective proceeded to force the bag open with a screwdriver. It contained 10 taped packages of cocaine. Defendant was then formally arrested. The Supreme Court of the United States has recently held that police may make brief investigative stops of persons at airports where predicated on a reasonable suspicion of drug trafficking (*United States v Place,* 462 US __, 103 S Ct 2637; *Florida v Royer,* 460 US __, 103 S Ct 1319). The information transmitted by Titus to Schmidt furnished such reasonable suspicion (cf. *Florida v Royer, supra*), and Schmidt was entitled to act upon it (*People v Lopez,* 95 AD2d 241; *People v Ward,* 95 AD2d 233). We thus find that the initial intrusion by Schmidt, wherein he identified himself to defendant as a police officer, told him to stop, and stated that he would like to talk to him, was permissible. When defendant was taken to the police room with the two officers, what had started as a *Terry*-type investigative stop (see *Terry v Ohio,* 392 US 1), had escalated into a seizure akin to a full-blown arrest, requiring probable cause (*Dunaway v New York,* 442 US 200). It is highly questionable whether probable cause existed so as to justify such a *de facto* arrest (cf. *United States v Place, supra; Florida v Royer, supra*). Furthermore, even with probable cause, a warrant is generally needed before a person's luggage is subjected to a search (*Arkansas v Sanders,* 442 US 753). Nevertheless, the possible lack of probable cause and the absence of a warrant do not avail defendant on his motion to suppress the cocaine. Where an item is abandoned independent of any improper police conduct, no Fourth Amendment interest is involved when the police seize and search that item (*Abel v United States,* 362 US 217, 241; *People v Pittman,* 14 NY2d 885). In this case, as found by Criminal Term, defendant abandoned the bag when he dropped it and stated that it was not his and that he did not know what it contained (see *People v D'Ambrosio,* 28 AD2d 1130; cf. *People v Howard,* 50 NY2d 583, cert den 449 US 1023). The act of abandonment was untainted since it was a result of what we have already seen to be totally appropriate police conduct, the initial approach by Detective Schmidt (cf. *People v Boodle,* 47 NY2d 398; *People v Foster,* 91 AD2d 1046). Any impropriety on the part of the police occurred after the case was abandoned and lawfully seized by Schmidt. At no time after its seizure and prior to

the search did defendant claim ownership or possession of the bag; rather, he continued to disclaim any relation with it. Thus, the bag must be considered to have remained abandoned up through the time of the search. Once the cocaine was discovered, that discovery being independent of any police misconduct, defendant could be, and was, legitimately arrested (*People v Rogers,* 52 NY2d 527). Criminal Term correctly concluded that the cocaine was admissible. I have considered defendant's other point raised on appeal and consider it to be without merit.