■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM VASQUEZ, Also Known as JOSE COLON, Respondent. — Order of the Supreme Court, Bronx County (R. Price, J.), entered December 19, 1983, which granted defendant's motion to suppress physical evidence and statements, unanimously modified, on the law and facts, to deny defendant's motion to suppress the gun, and otherwise affirmed, and the matter is remanded to Trial Term for further proceedings.

Defendant was indicted on June 15, 1983, for criminal possession of a weapon in the third degree, assault in the second degree, and resisting arrest. On November 23, 1983, a combined *Mapp* and *Huntley* hearing was held. As a result of the hearing, the court granted the motion to suppress both the physical evidence and statements made by defendant.

Police Officer Philip Anzalone and his partner, Hector Feliciano, were assigned to execute arrest warrants. On May 24, 1983, at about 11:45 A.M., they stopped at the corner of 148th Street and Willis Avenue. The officers were dressed in plainclothes, but they were riding in a marked patrol car. Anzalone exited the vehicle and saw defendant standing by a truck. Anzalone stated that defendant could possibly fit the description on a warrant he had. The warrant was one of about 20 or 30 he had in his possession and listed a description of one Ismael Ortiz, address 388 Willis Avenue, 5 feet, 5 inches, 145 pounds, age 47, male, black Hispanic. Defendant Vasquez is 5 feet 5 inches tall, Hispanic, and weighs 130 pounds.

Anzalone motioned to defendant to come toward him. At the time, Anzalone wore an Oakland Raiders open jacket. He wore

his badge on a chain around his neck. It is a silver badge which, Anzalone said, "stands out" when worn as noted above. As defendant drew closer, the officers asked him his name. Anzalone could not recall the name defendant gave him. However, he noticed that the name did not match the one on a brown and white pill bottle which protruded from defendant's left breast pocket and which he could see clearly. Anzalone pointed to the bottle and said to defendant "that's your name." With that, defendant slapped Anzalone's hand away with a backward motion of his left hand and began to move off to Anzalone's left. The officer then tried to grab the defendant, and the two began to struggle. Anzalone tried to cuff the defendant because he was fighting. During the struggle, Feliciano came out of a store and helped Anzalone subdue defendant. Anzalone felt what appeared to be a weapon. After getting one cuff on defendant, Anzalone and Feliciano found a loaded gun in his rear waistband, and defendant was arrested at the scene. After the arrest, Anzalone went to Lincoln Hospital to have a broken finger treated.

While defendant was being transported to the precinct, and before he was read his *Miranda* rights, Feliciano asked defendant where he obtained the gun. The defendant responded that he had purchased the weapon on 139th Street and Cypress Avenue for $200.

The suppression court found that there was nothing distinctive in the appearance of the defendant or the description in the warrant, nor any reason why the particular description would stand out in the officer's mind. The court found that the officer noted a different name on the pill bottle; that defendant hit his outstretched hand; and that the gun was discovered in the ensuing fracas.

The court cited the officer's civilian dress and found that he failed to identify himself or state the purpose of his inquiry. It held there was "credible" evidence that he had his shield on a chain, but that it was speculative that defendant realized Anzalone was a police officer until he was handcuffed.

Based on these findings, the court concluded, conceding the officers' credibility, that prior to the fracas defendant did nothing suspicious; that Anzalone had a sufficient basis to make an inquiry; that the pill bottle did not provide a basis for anything in excess of the original inquiry, and that the defendant had the right to walk away. Thus, the seizure of the gun and statement were held to be the direct result of an unlawful arrest. This was erroneous.

Police Officer Anzalone initially approached defendant to inquire as to his name. The minimal intrusion of approaching to request information is permissible when there is some objective, credible reason for that interference even if not necessarily indicative of criminality (*People v De Bour,* 40 NY2d 210). Officer Anzalone was in possession of a bench warrant. Defendant matched the general description of the person named in the warrant and also *was observed on Willis Avenue,* which was the street on which the person named in the warrant resided. Although the description was too general to warrant an immediate arrest, the warrant was clearly more than adequate to support an inquiry based upon the standard annunciated in *De Bour.*

The court's conclusion, from its own findings, that it would be purely speculative to suggest that defendant was initially aware that Anzalone was a police officer, is not well founded. The court credited the officers' testimony that Officer Anzalone wore his badge on a chain around his neck. This is a prominent way to display a shield. While it would obviously have been preferable for Anzalone to have identified himself verbally, the better conclusion is that defendant, who was only an arm's length away from Anzalone, saw the shield. We note that Officer Anzalone, although not in uniform, had just gotten out of a marked patrol car.

Upon observing that the name on the pill bottle varied, Anzalone justifiably pointed that fact out to defendant. Defendant's response was to slap away Anzalone's hand and move away. This is not an appropriate response. Ordinarily, a person addressed by a police officer does have an equal right to ignore his interrogator and walk away (*see, United States v Mendenhall,* 446 US 544). This should not, however, be read to mean that one may strike out at a police officer in doing so.

Defendant's conduct, therefore, clearly gave rise to a reasonable suspicion that Anzalone had found the man described in the warrant. Thus, he was justified, at the point at which defendant attempted to flee, in seeking to investigate further and in grabbing at defendant (*see, People v De Bour, supra*). An officer may respond to facts rapidly developing at the scene (*People v Benjamin,* 51 NY2d 267, 270).

The arrest of the defendant was therefore not unlawful, and the gun was not recovered as the result of an unlawful search and seizure. Of course, as is conceded by the People, the statement which was made by defendant was the result of police questioning prior to reading his *Miranda* rights to him, and therefore was properly suppressed on that basis. Concur — Sullivan, J. P., Ross, Asch and Kassal, JJ.