THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v EDWIN PACHECO, Appellant.

First Department, March 28, 1985

## APPEARANCES OF COUNSEL

*Susan L. Valle* of counsel (*Jeremy Gutman* with her on the brief; *Mario Merola, District Attorney,* attorney), for respondent.

*Theodore S. Green* of counsel (*William E. Hellerstein,* attorney), for appellant.

## OPINION OF THE COURT

FEIN, J.

Defendant was convicted upon his plea of guilty to attempted criminal possession of a weapon in the third degree, and was sentenced to imprisonment of one year.

At approximately 11:00 P.M. on August 26, 1981, Police Officer Baile and two other plain-clothes police officers went to investigate a robbery and theft of a moped in the neighborhood of 630 East 138th Street, in The Bronx. The officers were proceeding eastbound in an unmarked car when they made a U-turn, mounted the sidewalk and stopped in front of "Diamente", a club or pinball parlor, where they observed a young man on the sidewalk on a red moped. When they sought to inquire concerning the ownership of the moped, a crowd of teen-agers gathered around them. Officer Baile testified that as he was getting out of the car he observed defendant "sitting * * * right at the doorway, inside the shop". Defendant "stood up", holding a black bag, turned around, looked out the window, put the bag down on a shelf and then walked out the door toward the crowd, a distance of some three feet.

Officer Baile entered the club, without questioning defendant, walked over to the bag, picked it up and felt "what I believed to be a gun inside". He then unwrapped the bag and found a .32 caliber revolver with six rounds of ammunition. Officer Baile then walked over to where defendant was standing and told him: "Put your hands behind your back." The officer handcuffed defendant, told him he was under arrest, and placed him in the rear of the police car. The defendant was then driven to the precinct. En route, Officer Baile said to his partners who were in the front seat, "I wonder if this man is involved with the street robberies" in the area. Hearing this, defendant stated: "I'm not a robber. I've had this gun for two years, for my own protection. My house has been robbed twice."

At the precinct, Officer Baile placed the gun, the black bag and a shirt which had been in the bag on the front desk. Defendant, who was wearing only a T-shirt, asked if he could have the shirt because he was cold, and the officer gave it to him. On further search, 12 additional .32 caliber shells were found in defendant's left rear pocket. He was placed in a holding pen and given the *Miranda* warnings, whereupon he declined to make any further statements and requested that his sister be contacted.

The suppression Justice found that the officer was properly in the place where he observed defendant, and that "when he saw

the bag being put down after someone yelled 'police' [he] had a right to pick up the bag." As the bag was found in a public place, defendant was deemed to have no expectation of privacy, and under *People v Benjamin* (51 NY2d 267), the officer was entitled to pick up the bag "when he sees something suspicious and [has] a reason to believe that a weapon is involved". The court found the officer had sufficient basis to search the bag when he felt the outline of a gun, and hence, had probable cause to arrest defendant. The motion to suppress the gun and bullets found on defendant's person was denied.

The statement defendant made in the police car was found not to be a spontaneous declaration. It was prompted by the officer's speculation that defendant had been involved in other robberies. Accordingly, the statement was suppressed. However, defendant's request to have his shirt, because he was cold, was found to be admissible as a spontaneous declaration.

The question is whether defendant's actions legitimately gave rise to a reasonable suspicion which justified the officer in picking up the bag, and upon feeling the outline of a gun, opening the bag to examine its contents. The People challenge defendant's standing to raise any 4th Amendment question in that he had abandoned the bag by leaving it in a public place and walking away. The suppression Justice made no finding that there was an abandonment.

It is plain that the only factual predicate for the officer's suspicion was defendant's conduct. The issue is whether defendant's act of placing the bag on a shelf and walking approximately three feet away to where a crowd gathered was sufficient to create a reasonable suspicion that criminal activity involving this defendant was afoot. Without any proof that the defendant heard either the "warning whistle" or the shout of "police", the People assert, and Officer Baile testified, that the defendant's action in quickly getting up and "getting rid of" the bag was suspicious and suggestive of consciousness of guilt.

The fact that the events took place in a "high crime area" and the officers were at the site to investigate a "past robbery" did not make defendant's conduct a predicate for a reasonable suspicion that defendant was involved in criminal activity. There is nothing strange or unusual about a person in a club or even in a public place putting down his or her bag and walking three or more feet to observe an unusual event, such as a crowd gathering. The fact that defendant acted simultaneously with what appeared to be a street warning of the presence of the police could not convert what was otherwise unremarkable behavior

into suspicious or guilty activity. An unmarked car made an illegal U-turn and drove up onto the sidewalk. Plain-clothes male occupants emerged to question a youth on a moped. Under the circumstances, it is hardly strange that a person in a nearby public place walked a short distance to the door to observe the goings-on. It is notable that the police investigation had to do with the robbery of a moped and was conducted on the sidewalk. It had nothing to do with anything in the club.

The law is clear that "behavior which is susceptible of innocent as well as culpable interpretation" will not "constitute probable cause" (*People v De Bour,* 40 NY2d 210, 216). Such behavior "will not generate a founded or reasonable suspicion that a crime is at hand." (*People v De Bour, supra,* p 216.) As *De Bour* (*supra,* p 216) further holds, "we must examine the knowledge possessed [by the officer] at that moment and any reasonable inferences." In order for an officer to stop a person for inquiry there must first be a founded suspicion that criminal activity is present and that the person stopped was involved in such activity (*People v Cantor,* 36 NY2d 106, 112-113). The same principle applies to a search and seizure (*People v Howard,* 50 NY2d 583; *People v McGriff,* 99 AD2d 818). The subsequently acquired suspicion arising from the stop does not authorize the stop or a search made to justify the stop. The suspicion that criminal activity is afoot must exist at the moment of the police intrusion (*People v De Bour,* 40 NY2d, at p 215). There must be a basis for such suspicion as a predicate for the police action (*People v Stewart,* 41 NY2d 65). Mere "hunches" or "gut reactions" are insufficient (*People v Sobotker,* 43 NY2d 559, 564). The record is barren of any evidence which would connect the defendant with the investigation in which the police were engaged. Not until after the gun was discovered and the defendant was placed under arrest was it suggested that he might have been involved in unspecified street robberies.

■ Before determining whether a search or seizure is reasonable, the court must consider "first whether or not the police action was justified in its inception and secondly whether or not that action was reasonably related in scope to the circumstances which rendered its initiation permissible" (*People v De Bour,* 40 NY2d, at p 215). Neither the fact that the defendant was at a public place near where officers were conducting an investigation, nor any act observed by the officers, was sufficient to justify the search. The issue is not whether the defendant had a right of privacy in the "social club" or pinball parlor, whether or not open to the public, but rather, whether he had a right of privacy in the bag in the absence of clear evidence that the bag was

abandoned. It would surprise most people to discover that placing a bag on a shelf or counter in a public or private place and taking a few steps to observe some event or something going on constitutes an abandonment of the bag, entitling the police to search it. The mere statement of such a proposition offends the Constitution.

■ Such a person would have a legitimate expectation of privacy in his or her bag. There was nothing in the events observed by the officers to differentiate this defendant from any person placing his or her bag upon a shelf or counter. Hence, defendant had standing to challenge the search of the bag, and the officer had no basis for the search.

The suppression Justice never determined whether the defendant had abandoned the bag. The People's contention on appeal that defendant did so "by leaving the bag in a public place and walking away" is not supported by the record. The officer conceded that defendant walked not more than three feet from the place where he left the bag. Since the bag was deposited on a shelf in a "social club" frequented by defendant, it was hardly evidence of an unequivocal intention to abandon the property. There was no finding, and there could be none, that defendant abandoned the property in which he had a constitutionally protected expectation of privacy.

■ The suppression Justice's reliance on *People v Benjamin* (51 NY2d 267, *supra*) provides no support for the conclusion that the officer had a right to pick up the bag because he had observed "something suspicious" and had "a reason to believe that a weapon is involved". *Benjamin* is not comparable. In *Benjamin,* the police radio call directing the officer to a scene where it was reported that there were men with guns present, made it appropriate for the police to search the defendant, who had stepped backward and reached beneath his jacket to the rear of his waistband as the officers approached. In that case it was reasonable for the officer to conclude that the defendant might be armed. Therefore a limited search was justified under the circumstances (*People v Benjamin,* 51 NY2d 267, 271, *supra*). Here, however, before Officer Baile made the search of the bag, there was nothing to indicate defendant was armed or presented any danger to the police. The officer was ignorant of the contents of the bag. There is no evidence that he observed any suspicious "bulges" or "movements". The officer had no facts on which to form a reasonable suspicion that defendant was armed. There was no perceived threat. The defendant was at least three feet away, just outside the door.

There was no constitutional basis for the search of defendant's property and no evidence that it had been abandoned. This defendant's behavior was even more innocuous than that of the defendant in *People v Howard* (50 NY2d 583, *supra*).

The judgment, Supreme Court, Bronx County (Harold Silverman, J.), rendered September 13, 1982, convicting defendant, upon his plea of guilty, of criminal possession of a weapon in the third degree and sentencing him to imprisonment for one year, should be reversed, on the law, the plea and sentence vacated, the motion to suppress granted and the indictment dismissed.

BLOOM, J. (dissenting). We are, once again, confronted with the right of police to conduct a search where there is a street encounter. This time, however, the evidence indicates a somewhat different context.

Defendant was arrested and charged with possession of a gun. He moved for an omnibus hearing to suppress the gun and certain statements alleged to have been made by him to the arresting officer. Initially, the motion was denied without a hearing. The motion court thereafter reversed itself. The hearing court, after listening to the testimony, denied the motion to suppress physical evidence. It granted, in part, the motion to suppress the statements made. Thereafter, defendant pleaded guilty to the charge. Only the motion to suppress physical evidence is now before us.

At the hearing, Police Officer Robert Baile testified that he and his two partners were on anticrime patrol in an unmarked police car on August 26, 1981 in the 40th Precinct. At or about 11:50 P.M., they were called to 630 East 138th Street in The Bronx with the report of a "past robbery" of a moped. In proceeding to the scene the police vehicle went in an easterly direction. Since 630 was on the northerly side of 138th Street, the vehicle made a U-turn and came to a stop on the sidewalk in front of a store located at the scene. Baile stated that as the automobile halted, he heard a whistle which he interpreted as a signal, and then someone called out "Police".

The other two officers, both of whom were sitting in the front seat, emerged from the car quite quickly and walked over to a young man who was standing in the vicinity of the store holding on to a red motorcycle surrounded by a group of black and Hispanic males, and started to question him. Baile, whose eyes settled on defendant, observed that he was sitting on a ledge inside the store, holding a black bag. Defendant arose, placed the bag on the ledge and walked outside the store to the edge of the crowd, a distance of about three feet. In Baile's words "he

seemed to me to quickly get rid of the bag by putting it down and getting away from it". Baile then exited from the vehicle, entered the store, which he described as a "pinball shop" and picked up the bag. Feeling it from the outside, he suspected the presence of a gun. He opened the bag and confirmed his suspicion. He then went over to where defendant was standing and arrested and handcuffed him. A search of defendant disclosed the presence of bullets in defendant's rear trouser pocket.

Defendant's testimony was wholly at variance with that given by Baile. Defendant stated that he had just completed work at a candy store where he was employed, which was located approximately 125 yards from 630 East 138th Street. He, his friend Alphonso, who owned a red Yamaha motorcycle, and another friend, Mike Medina, were walking toward defendant's house. The motorcycle was between Alphonso and defendant as they walked. When they came abreast of 630, they were stopped by the three policemen. One started to question Alphonso with respect to the "papers" for the motorcycle while the other two officers entered the store which defendant described as a social club called the "Diamente". Shortly thereafter they emerged with a black bag which one of the police officers insisted was the defendants. The bag was opened and inside there was a gun. Defendant was then arrested, handcuffed and placed in the police vehicle. Throughout his testimony defendant insisted that he never owned or possessed the gun or the bag, although he conceded that the gun was a .32 caliber weapon, as were the bullets found in his pocket.

The hearing court credited the testimony of Baile and discredited that of defendant. Based on those findings, it concluded that the pinball arcade was a public place in which defendant had no expectation of privacy. It concluded further that defendant's actions were sufficiently suspicious in nature to give rise to the seizure of the bag and the search to ascertain its contents, citing *People v Benjamin* (51 NY2d 267). While we agree with the findings of the hearing court and are in accord with the end result reached by it, we prefer to place our conclusion on other grounds.

We may start with the premise that here, as in *People v Howard* (50 NY2d 583), defendant's actions were prompted by police *presence.* Unlike *Howard,* however, they were not motivated by police *pressure.* When defendant placed the bag on the ledge and moved outside the pinball shop, he undertook to divest himself of its possession. This was a deliberate and calculated step to enable him to disclaim ownership in the event that he

was questioned as to the bag's contents (*see, People v Boodle,* 47 NY2d 398; *People v Berry,* 87 AD2d 53; *People v Patino,* 97 AD2d 552). Indeed, his testimony throughout the hearing is based on the claim that the bag was not his and that he had not been in the pinball shop that night. Thus, it is plain that he abandoned the bag. As a result of this action, he ceased to have such interest, either proprietary or possessory, in the bag as to give him standing to suppress its contents (*People v Ponder,* 54 NY2d 160; *United States v Salvucci,* 448 US 83). Indeed, this conclusion is buttressed by the fact that in *Boodle* there was an underlying illegal act, the seizure of defendant. Here there is none. Baile, coming upon the scene in an area undisputed to be crime prone, heard first the whistle and then the cry of "police". He then observed defendant sitting on a ledge holding a bag. He saw defendant arise from the ledge on which he was sitting, place the bag on the ledge and move outside the pinball shop to the edge of the crowd. Although he did not then know what was in the bag, the circumstances gave rise to the reasonable suspicion that the law would not look with favor on its possession (*cf. People v De Bour,* 40 NY2d 210). To this experienced police officer it led to the conclusion that defendant was endeavoring to position himself so that he could disclaim ownership in the event such a disclaimer became necessary.

Our brethren in the majority make much of the fact that defendant moved only a distance of some feet when Baile seized the bag. However, abandonment is not to be measured by feet but by intention. Here, the intention was clear. Indeed, the disclaimer of ownership makes clear that this was the line of defense to be pursued, should defense become necessary. In these circumstances, we are of the opinion that the search of the bag violated no privacy right of defendant and that the motion to suppress was properly denied.

MURPHY, P. J., and ASCH, J., concur with FEIN, J.; BLOOM and KASSAL, JJ., dissent in an opinion by BLOOM, J.

Judgment, Supreme Court, Bronx County, rendered on September 13, 1982, reversed, on the law, the plea and sentence vacated, the motion to suppress granted, and the indictment dismissed.