■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN C. SWEENEY, Appellant.—Appeal by defendant from (1) a judgment of the County Court, Nassau County (Samenga, J.), rendered November 12, 1984, convicting him of attempted burglary in the second degree, upon his plea of guilty, and imposing sentence; and (2) an amended judgment of the same court (Santagata, J.), rendered December 10, 1984, upon his plea of guilty, adjudicating him in violation of probation and imposing sentence. The appeal brings up for review the denial of defendant's motion to suppress evidence (Samenga, J.).

Judgment and amended judgment affirmed.

On the present appeals, defendant contends that he was

illegally stopped by Sergeant John Fey of the Rockville Centre Police Department as he was merely walking down the street. He claims he was then transported to a police station for questioning against his will and effectively arrested, and that, therefore, a glove and all other evidence derived from the encounter should be suppressed.

The suppression court stated:

"Now the court has listened to the testimony and concludes that Police Sergeant John [F]ey had an articulable reason for approaching the defendant Sweeney and engaging him in conversation.

"That officer's explanation in the Court's opinion is credible and acceptable.

"While patrolling alone in an area in Rockville Centre which was a target for numerous burglaries and acting under cover to the extent that he was in an unmarked car wearing civilian clothes, Police Sergeant John [F]ey was attracted by a loan *[sic]* figure walking on the street first in one direction and then in another.

"Concluding that this individual was a person he recognized as previously having been involved in crime and suspicious of his conduct, the officer radioed for assistance, approached the defendant, identified himself and asked the defendant what he was doing in that area.

"As an exercise of a police officer's common law right to inquire, People v. Carrasquillo, 54 NY2d 248, this conduct is not the kind of intrusion which violated the defendant's constitutional rights. See People v. Debour, 40 NY2d 210.

"In the course of a brief and innocuous conversation, the officer observed two leather gloves protruding from the defendant's jacket pocket.

"Upon request of Sergeant [F]ey, the defendant willingly removed and showed them to the officer. At that time Sergeant [F]ey observed a piece of material missing from one of the gloves.

"And recalling that a week previously a small piece of leather similar in color and size was found in the burglarized home in the area, he asked the defendant to accompany him to the police department for further investigation.

"The defendant acceded to this request and rode back with the officer to the local precinct.

"At the time that Police Sergeant [F]ey spoke to the defendant initially, there was no probable cause to detain the defendant.

"Upon the willing relinquishment of the gloves and the observations and prior knowledge of Sergeant [F]ey, probable cause became manifest and warranted the officer's further conduct.

"Under the circumstances, further investigation was the exercise of good judgment.

"And as the investigation progressed, reason for implication of this defendant in the burglary hereinabove mentioned developed.

"The encounter on the street was brief and devoid of harassment or intimidation. As the investigation progressed, so did the probable cause.

"And the Court further finds that the defendant's personal security was not appropriated or limited or restricted until good cause for such action became obvious. See Terry v. Ohio, 392 U.S. One *[sic]*.

"Having heard the testimony, listened to the defendant's witnesses, namely himself, I think.

"[THE PROSECUTOR]: Correct.

"THE COURT: And having evaluated and weighed all the evidence submitted by the People and the defendant, the Court finds that the defendant's motion to suppress certain evidence is not supported and is therefore denied and further finds that oral and/or written statements obtained from the defendant were properly and legally obtained and therefore his motion to suppress any such statement or statements is also denied".

Thereafter, defendant was convicted, upon his plea of guilty, of attempted burglary in the second degree. He also pleaded guilty to a violation of probation.

"The degree of permissible police interference is directly proportionate to the degree of objectively credible information possessed by them" *(People v Scruggs,* 90 AD2d 520).

"It is settled that, under appropriate conditions, an officer may briefly detain and question a suspect in a public place on information not amounting to probable cause, for, until an actual arrest occurs, the Constitution demands only that the action of the police be justified at its inception and reasonably related in scope and intensity to the circumstances surrounding the encounter. (See *People v Cantor,* 36 NY2d 106, 111; *Terry v Ohio,* 392 US 1, 20; cf. *Dunaway v New York,* 442 US 200.) * * *

"The reasonableness standard contemplates and permits a

flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds" *(People v Finlayson,* 76 AD2d 670, 674-675, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931).

A police officer, in the absence of any concrete indication of criminality, may approach a private citizen on the street for the purpose of requesting information provided there is "some articulable reason sufficient to justify the police action which was undertaken" *(People v De Bour,* 40 NY2d 210, 213). Manifestly, Sergeant Fey did not have any concrete indication of criminality on the part of the defendant when he asked him what he was doing in the area and engaged in small talk with him for a few minutes. However, he had an articulable reason sufficient to warrant the brief inquiry which he made of defendant. Sergeant Fey had observed defendant, whom he believed, albeit mistakenly, to be a known criminal, first walking in one direction and then another, i.e., circling the block, "looking at the houses" in an area of Rockville Centre which had suffered from a high incidence of burglaries. Quite apart from the mistaken belief which he had, his knowledge of the numerous burglaries in the area, and the manner in which the defendant was conducting himself while Sergeant Fey observed him, aroused a suspicion in the mind of Sergeant Fey which was sufficient to have justified the inquiry by Sergeant Fey as to defendant's presence in the neighborhood. At this point, a suspicion of criminal activity was not necessary to justify Sergeant Fey's actions. The encounter was devoid of harassment or intimidation. The defendant was not "seized" by Sergeant Fey, and defendant was not humiliated or degraded or subjected to a loss of dignity. Thus, the initial encounter was lawful at its inception *(see, People v Joy,* 114 AD2d 517; *cf. People v Johnson,* 64 NY2d 617).

After having spoken briefly and in a friendly manner with defendant, the officer noticed that the material of one of defendant's gloves, in plain view protruding from his jacket pocket, seemed to match the color of a piece of material discovered at the scene of a burglary about nine days earlier. Moreover, the gloves were ladies' gloves which did not match. One glove was brown and one blue. The officer asked defendant if he could look at the gloves and defendant took them out of his pocket and handed them to the officer. The officer noticed that the blue glove was torn and that a piece of material was missing from it. Thereafter, the officer asked the

defendant if he would mind coming to the police station and it is undisputed that defendant agreed without objection. Here, again, there was no seizure of the person of defendant.

Under the totality of the circumstances of this case, it cannot be said that the hearing court erred in determining that the police officer had properly exercised his common-law right to inquire when he first spoke to defendant and that defendant had thereafter voluntarily accompanied the officer to the police station. Furthermore, at the hearing, defendant did not challenge the officer's contention that he believed defendant to be a known criminal, and on this record we cannot say that the court erred, as a matter of law, in crediting the officer's testimony in that regard.

Finally, defendant contends that his glove was illegally seized and retained by the police. However, once defendant arrived at the police station, the police officers involved noticed the similarity between the glove and the material found at the burglary scene and the defendant admitted to wearing and possessing the gloves prior to the date of the burglary, there arose, considering the totality of the circumstances, probable cause to believe they had been used in the commission of the burglary in question and that it was defendant who had used them. Hence, their retention by the police so that they could be examined by the Scientific Investigation Bureau of the Nassau County Police Department did not violate defendant's constitutional rights.

Accordingly, the judgment and amended judgment convicting defendant of attempted burglary in the second degree and adjudicating him in violation of probation, respectively, are affirmed. Weinstein, Niehoff and Lawrence, JJ., concur.

Brown, J. P., dissents and votes to reverse the judgment and amended judgment appealed from, vacate the pleas, grant defendant's motion, and remit to the County Court, Nassau County, for further proceedings, with the following memorandum: It is my opinion that the People have failed to establish a reasonable basis for the stopping and questioning of the defendant. Accordingly, the physical evidence and statements obtained as a result thereof must be suppressed. The record reveals no articulable facts from which Sergeant Fey could have concluded that the defendant's conduct was suspicious. According to Sergeant Fey's testimony, defendant's conduct consisted simply of walking through a residential district in the middle of the day looking at houses. Beyond this, the only basis for Sergeant Fey's claimed suspicion was the existence of

a number of recent burglaries in the area, his mistaken belief that defendant was a known burglar who lived in the area, and the defendant having changed the direction in which he was walking during the time the sergeant had driven around the block. Viewed objectively, this conduct cannot form a basis for a stop.

I see little in this case to distinguish it from *People v Johnson* (64 NY2d 617, 618-619), wherein the court stated:

"The flaw in the People's case is that nothing preceding the encounter with defendant justified a founded suspicion that he was engaged in or about to be engaged in criminal conduct. The officer testified to no more than that he had known defendant for six years and had 'arrested him on several occasions for burglary' and that, 'He was just walking through the Corn Hill area. We had a rash of burglaries in the area the last few weeks and [were] concentrating our own efforts in the area. He was walking around looking at houses and aroused my suspicion'. The facts that there had been previous criminal activity in the area, that when stopped defendant was in an alley and that he was 'looking at houses' provide no sufficient bases to infer criminal activity had been or was about to be undertaken. It can hardly be regarded as unusual that defendant was looking at houses, for there is little else to look at in a residential neighborhood, and there is no other testimony suggesting that his behavior was furtive or his movements unusual or that he was carrying anything that might provide a basis for suspicion.

"In sum, a stop based on no more than that a suspect has previously been arrested for burglary and that there have been burglaries in the area is premature and unlawful and cannot be justified by subsequently acquired information resulting from the stop. And there being in the facts presented no basis for an inference of criminal activity, the issue is not beyond our power of review (cf. *People v Harrison*, 57 NY2d 470)."

Nor can I accept the conclusion that Sergeant Fey's conduct here constituted no more than a brief, limited inquiry predicated upon the common-law right of inquiry *(see, People v Carrasquillo*, 54 NY2d 248; *People v De Bour*, 40 NY2d 210). An examination of Sergeant Fey's testimony indicates that he believed defendant to be "suspicious", and he radioed headquarters for backup assistance because he was "in the process of stopping" a suspicious person. Shortly after he stopped defendant, he was joined by other police officers whom he had summoned to assist him. This testimony leads to the inevita-

ble conclusion that the police conduct here rose above the level of a brief limited street inquiry to the level of a stop purportedly founded upon reasonable suspicion. This conclusion is also supported by the fact that, although the suppression court found that the encounter was an exercise of the common-law right of inquiry, the People did not specifically rely on such theory at the suppression hearing. Rather, they argued that the encounter was a justified minimal intrusion with respect to the movement of the defendant *(see, People v Johnson, supra,* at p 619, n 2).

However, even conceding for purposes of our discussion that the police conduct amounted to no more than the limited type of inquiry sanctioned under the common-law right of inquiry, such inquiry must nonetheless be founded upon a sufficiently credible and objective factual predicate *(see, People v Carrasquillo, supra,* at p 253). At bar, such a factual predicate is wholly lacking. An individual walking and looking at houses in a residential neighborhood where "there is little else to look at" *(People v Johnson, supra,* at p 619) does not, by that activity, become a suitable subject for police inquiry. Nor does a predicate for inquiry develop simply because the defendant was mistaken for a known burglar who lived in the area. Even assuming that the defendant was, in fact, this known burglar (who was never identified), since he was supposedly a resident of the area in which he was stopped, and, apparently, was not currently wanted for burglary, there was no basis for a police inquiry as to what he was doing in that area. Moreover, there was nothing to indicate that the defendant acted in any unusual fashion in response to Sergeant Fey's presence or attempted in any respect to evade him *(cf. People v Carrasquillo, supra,* at p 253).

Under the circumstances, I conclude that no basis was established for either a stop or a common-law inquiry, and would, accordingly, vote to reverse the judgment and amended judgment and suppress the evidence derived from the defendant's encounter with the police *(People v Richardson,* 114 AD2d 473).