■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v ROBERT DANIELS, Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Beerman, J.), dated November 29, 1984, which, after a hearing, granted that branch of the defendant's omnibus motion which was to suppress physical evidence.

Order reversed, on the law, and that branch of the defendant's omnibus motion which was to suppress physical evidence denied.

The defendant was charged with burglary and related crimes arising from an unlawful entry into, and the theft of a typewriter from, a building in Long Island City, Queens. Prior to the trial, he moved to suppress physical evidence and a statement allegedly made by him to the police. A combined Mapp and Huntley hearing was conducted to determine the issues raised on the motion. The sole witness called by the People at the hearing was Sergeant Manning Edmonds of the New York City Police Department. The defendant did not testify and called no witnesses.

Sergeant Edmonds testified that on the evening of July 8, 1984, he was on patrol with his partner in the Queens Plaza warehouse areas of Long Island City, in an unmarked car, and

wearing civilian clothes. He first observed the defendant alone between 6:30 and 7:00 P.M. at the corner of 24th Street and 34th Avenue in the vicinity of several closed factory buildings. The defendant was walking with crutches and had a cast on his leg. During the next several hours, in the course of his patrol, Edmonds saw the defendant in the area approximately four times.

At approximately 9:20 P.M., Edmonds saw the defendant again, crossing Queens Boulevard diagonally from 34th Street towards 33rd Street. The defendant was hobbling, with his crutches under his arms, and was holding a large white plastic bag in both hands, which appeared to Edmonds to contain a heavy object. Recognizing the defendant as the same person he had seen in the area on several occasions earlier in the evening, Edmonds and his partner drove around the block and pulled up next to the defendant, who was now standing by a telephone booth on the sidewalk on the north side of Queens Boulevard between 33rd Street and 34th Street. The plastic bag was on the ground at the defendant's feet. Without getting out of the car or identifying himself, Sergeant Edmonds asked the defendant, "what do you have in that bag"? The defendant replied, "it's a hot typewriter". The sergeant then asked what kind of typewriter it was, and the defendant responded that he did not know. Edmonds asked if he could see the typewriter, and, without any further conversation, he got out of his car, looked into the bag, and saw that the typewriter was an IBM. Edmonds also observed that the defendant was wearing a glove on his right hand, and that both his left hand and his crutches had blood on them. Although they had received no reports of any burglaries in the area prior to their encounter with the defendant, Edmonds and his partner identified themselves to the defendant, placed him under arrest and seated him in their car.

The officers then drove through the area in an attempt to find evidence of a recent break-in. At a factory on 34th Street, Sergeant Edmonds observed a broken window at street level, approximately four feet off the ground. Using his flashlight, he looked inside and saw broken glass and blood on at least one of the cardboard boxes which was inside the factory. The typewriter found in the defendant's possession was subsequently identified as having belonged to the business located in that factory.

Upon this evidence, Criminal Term granted that branch of the defendant's omnibus motion which was to suppress the typewriter, holding that the defendant's conduct was innocu-

ous and did not generate a reasonable suspicion of criminal activity so as to justify Sergeant Edmonds' actions. However, the hearing court did make a factual finding that the uncontroverted testimony of Sergeant Edmonds was credible, and that finding, which is supported by the record, is entitled to great weight and should not be disturbed on appeal *(see, People v Prochilo,* 41 NY2d 759, 761; *People v Gee,* 104 AD2d 561).* Thus, we can perceive of no justification for our dissenting colleague's assessment that Sergeant Edmonds' testimony was lacking in credibility.

Having accepted the hearing court's findings of fact, we nevertheless determine that the conclusions of law reached by that court were erroneous. The hearing record does not establish that at the inception of his encounter with the defendant Sergeant Edmonds had probable cause to effect an immediate arrest *(see, People v Carrasquillo,* 54 NY2d 248, 254; *People v Brnja,* 50 NY2d 366, 372). Nor did he possess a reasonable suspicion that the defendant had committed or was about to commit a crime *(see,* CPL 140.50; *see also, People v Cantor,* 36 NY2d 106, 112-113; *People v Rosario,* 94 AD2d 329, 331-332; *People v Finlayson,* 76 AD2d 670, 676, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931) or a founded suspicion that criminal activity was afoot *(see, People v Cantor, supra,* p 114), so as to justify some lesser intrusion or restraint upon the defendant's liberty.

However, even in the absence of any indication of criminal activity, a police officer may, on the basis of some articulable reason, approach a private citizen on the street for the purpose of requesting information, so long as the individual is neither physically nor constructively detained against his will *(see, People v De Bour,* 40 NY2d 210, 213; *see also, People v Carrasquillo, supra,* pp 252-253; *People v Richardson,* 114 AD2d 473, 474; *People v Vasquez,* 108 AD2d 701, 703). In this case, although there may have been an insufficient predicate for seizure, there was ample justification for the actions of the police, which amounted to no more than a simple inquiry of the defendant regarding the contents of the bag then in his possession. The reasons for such inquiry are readily articulable: the defendant, who was alone and walking with the aid of crutches, had been seen repeatedly by the police over a period of two or three hours in a largely deserted area of factories and warehouses which had been closed for the day and, on the last occasion, at 9:20 P.M., he was seen hobbling on his crutches and attempting to carry, with difficulty, a newly acquired white plastic bag apparently containing a heavy

object. In our view, these observations provided a reasonable basis for the brief limited inquiry of the defendant conducted by Sergeant Edmonds. Moreover, the circumstances attending the encounter at its inception indicate that there was an absence of "actual or constructive restraint" *(see, People v De Bour, supra,* at p 216) and that the police, who were in plain clothes and in an unmarked car, conducted themselves in a manner which was nonthreatening and noncoercive. In sum, there was nothing in the encounter from which the defendant could have reasonably inferred that he was required to answer Sergeant Edmonds' question or that he was not free to leave *(see, People v Carrasquillo, supra,* pp 252-253).

Of course, the standard of reasonableness, which is

"the touchstone of the Fourth Amendment * * *

"contemplates and permits a flexible set of escalating police responses, provided only that they remain reasonably related in scope and intensity to the information the officer initially has, and to the information he gathers as his encounter with the citizen unfolds" *(People v Finlayson, supra,* p 675). Thus, once the defendant admitted, in response to Sergeant Edmonds' legitimate inquiry, that he was carrying a "hot" typewriter in the plastic bag, and Edmonds observed the single glove on the defendant's right hand and the blood on his bare left hand and crutches, the information known to Edmonds was sufficient to constitute probable cause for the defendant's arrest *(cf. People v Carrasquillo, supra)*. Thompson, J. P., Bracken and Kunzeman, JJ., concur.

Weinstein, J., dissents and votes to affirm the order appealed from, with the following memorandum: The objective credible evidence forming the police predicate in this case was Sergeant Edmonds' observation of the defendant after business hours in a deserted industrial area which was noted for prostitution. Sergeant Edmonds had observed the defendant a number of prior times in the course of their patrol that evening. At the time of their last observation, the defendant, who had a cast on his leg and was using crutches, was struggling across a street while carrying a large white plastic bag. The officers pulled alongside the defendant in an unmarked car and asked him what he was carrying. The testimony of the arresting officer with respect to the defendant's forthright admission, to a total stranger, that the bag he was carrying contained "a hot typewriter" defies credibility. At no time prior to effecting the arrest did the police ask the defendant to identify himself or to explain the circumstances surrounding his presence in that locality at that time of day.

Rather, Sergeant Edmonds, without identifying himself as a police officer, continued to inquire as to the make and origin of the machine in the defendant's possession.

Significantly, there had been no report of a recent burglary in the area *(cf. People v Rosario,* 94 AD2d 329). Nor were the police involved in any ongoing investigation at the time they approached the defendant *(cf. People v Pacheco,* 107 AD2d 473, *appeal dismissed* 67 NY2d 631). While the area of the encounter was noted for prostitution, no evidence was presented regarding a high incidence of burglaries there *(cf. People v Sweeney,* 115 AD2d 502). Nor can it reasonably be contended that the defendant's behavior was furtive or that he posed a threat or danger. On these facts, the defendant's behavior did not reach the level of that kind of equivocal behavior which might justify the response taken by the police *(see, People v Allen,* 109 AD2d 24).

This court has held that "[i]nnocuous behavior is not sufficient to generate a reasonable suspicion that a crime is in the process of being committed or has been or is about to be committed, and, under such circumstances, an individual may not be seized, either constructively or physically, without the presence of some specific articulable facts warranting such seizure" *(People v Richardson,* 114 AD2d 473, 474-475; *see also, People v Johnson,* 64 NY2d 617). Even the limited level of inquiry sanctioned under the common-law right of inquiry must be founded upon a sufficiently credible and objective factual predicate *(see, People v Carrasquillo,* 54 NY2d 248, 253). Under circumstances where a police officer entertains no more than a mere hunch or a vague suspicion, virtually no interference with the citizen's liberty is permissible *(see, People v Finlayson,* 76 AD2d 670, 675, *lv denied* 51 NY2d 1011, *cert denied* 450 US 931).

Assuming, arguendo, that some type of police action was warranted under the circumstances, the response chosen herein was inappropriate and not reasonably related in scope to the circumstances which rendered its initiation permissible *(see, People v Cantor,* 36 NY2d 106, 111). The police conduct here, where the sergeant almost immediately exited his vehicle in order to examine the defendant's parcel, rosé above the level of a limited street inquiry to the level of a stop purportedly predicated upon reasonable suspicion. The fact that the defendant did not initially know that he was being approached by the police rather than a private citizen bears no significance. "The crucial factor was that depriving the defendant of his freedom of movement was effected by the police.

Constitutional protections do not vanish merely because the victim of the unlawful governmental action fails to perceive the identity of the violator as a police officer" *(see, People v Cantor, supra,* p 112).