■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v BEVERLY CAMPBELL, Respondent.—Order, Supreme Court,

Bronx County (John Byrne, J.), entered February 9, 1989, which granted defendant's motion to suppress physical evidence and statements, affirmed.

As defendant was walking along the street one afternoon with a plastic bag under her arm, she noticed an unmarked radio patrol car pull up alongside her. When she realized that the occupants of the vehicle were officers who had previously arrested her, her eyes widened, her mouth opened and her shoulders quickly shrugged back. She then turned and began walking in the opposite direction. Sergeant Ohrnberger got out of the patrol car and approached defendant who placed the bag she was carrying on the shelf of a nearby newstand. Ohrnberger testified that defendant then walked past him while Officer Majett stated that after she placed the bag on the newstand, defendant walked back towards both officers. Majett then told defendant to "[s]top here, Miss Campbell." After Majett ordered defendant to stop, Ohrnberger retrieved the bag from the newstand and asked defendant if it belonged to her. When she did not respond, he opened the bag which contained a gun wrapped in a towel. Defendant was arrested and transported to the police station where she made a statement.

We agree with the Supreme Court that the police lacked a reasonable suspicion to detain defendant. "Before the police may stop a person pursuant to the common-law right to inquire there must exist at that moment a founded suspicion that criminal activity is present *(People v Cantor,* [36 NY2d 106]; *People v Rosemond,* 26 NY2d 101)" *(People v De Bour,* 40 NY2d 210, 215). The fact that defendant appeared startled at the sight of the officers and began to walk away is "innocuous behavior [which] will not generate a founded or reasonable suspicion that a crime is at hand" *(People v De Bour, supra,* at 216; *see also, People v Howard,* 50 NY2d 583, *cert denied* 449 US 1023).

The officers' testimony was conflicting as to defendant's actions after placing the bag on the newsstand shelf and failed to meet the People's burden of establishing her unequivocal intention to abandon the property such as to divest her of standing to contest the introduction of the gun *(People v Howard, supra; People v Boodle,* 47 NY2d 398, *cert denied* 444 US 969; *People v Pacheco,* 107 AD2d 473, *appeal dismissed* 67 NY2d 631).

Since the detention and arrest of defendant were illegal, the subsequent statement made by her at the precinct was prop-

erly suppressed as fruit of the poisonous tree *(Wong Sun v United States,* 371 US 471; *People v Dodt,* 61 NY2d 408). Concur—Carro, Milonas, Rosenberger and Ellerin, JJ.

Sullivan, J. P., dissents in a memorandum as follows: I would reverse and deny the motion to suppress both as to the gun and the statements defendant made while in police custody.

At about 12:55 P.M. on September 28, 1987, as the unmarked car in which Police Officers Majett and Ohrnberger were on routine patrol slowly proceeded west on East 169th Street in The Bronx, the officers observed defendant walking alongside of and in the same direction as the patrol car, carrying a brown plastic bag under her left arm. The officers knew defendant by name because she had previously been arrested for narcotics possession. As the patrol car pulled abreast of defendant, she looked at the officers and appeared startled; her eyes opened wide, her mouth "opened up like she was taking a deep breath" and her shoulders "went back." Defendant turned around and began walking—"[v]ery quickly"—in the direction from which she had come. At that point the patrol car stopped, and Sergeant Ohrnberger exited and "trotted" to the sidewalk.

Defendant, meanwhile, went to a newsstand about 10 to 15 feet from the parked police car and placed the bag on top of a stack of newspapers on a bench in front of the newsstand where the newspapers were exhibited. When Ohrnberger saw defendant place the bag on the newsstand, he walked toward the newsstand. As he did so, defendant, once again walking westbound, passed him. Ohrnberger picked up the bag and squeezed it, feeling what he thought was a gun.

Ohrnberger then walked over to defendant, who had been detained by Officer Majett, and asked her if the bag belonged to her. Receiving no reply, he opened the bag and found a loaded automatic pistol. Defendant was placed under arrest.

Later that day, while in police custody and after she had been given *Miranda* warnings, defendant made a statement to Detective Marrone. After the statement was taken and signed by defendant, she informed Detective Marrone that she had a case pending. Although Detective Marrone had been informed by the arresting officer that defendant was a drug dealer, Marrone had no knowledge of any charges pending against her. Nor were there any available records which so indicated.

Although the suppression court found the officers' testimony to be credible, the court nevertheless suppressed the gun,

finding that the police officers were not authorized in stopping defendant. In so ruling, the court rejected the People's claim that defendant had abandoned the gun and therefore lacked standing to contest its seizure. Concluding that defendant's representation by counsel on prior pending charges barred admissibility of her statement, the court also suppressed defendant's statement.

In my view, by expressing surprise at the police presence, immediately changing her direction and placing the bag on the newsstand 10 or 15 feet away before walking back toward the police vehicle, defendant acted voluntarily and clearly indicated an intention to rid herself of incriminating evidence. Since she "indicate[d] an intent to purposefully divest [herself] of possession of the [property]" her actions constitute an abandonment.* (People v Brown, 40 AD2d 527.) Defendant therefore had no legitimate expectation of privacy in the bag and hence no standing to challenge the admissibility of the gun. (See, People v Ali, 131 AD2d 857, 858, affd 71 NY2d 1010.)

In People v Pacheco (107 AD2d 473, 477, appeal dismissed 67 NY2d 631), relied upon by the majority, the court stated, "The People's contention on appeal that defendant [abandoned the bag] 'by leaving [it] in a public place and walking away' is not supported by the record. The officer conceded that defendant walked no more than three feet from the place where he left the bag. Since the bag was deposited on a shelf in a 'social club' frequented by defendant, it was hardly evidence of an unequivocal intention to abandon the property." Here, in contrast, the record clearly demonstrates that defendant left the bag in a public place and walked away. Indeed, while the Pacheco court described the defendant's conduct as "placing a bag on a shelf or counter in a public or private place and taking a few steps to observe some event or something going on" and held that it did not constitute an abandonment (supra, at 477), no explanation inconsistent with an abandonment is proffered for defendant's conduct here. Moreover, unlike Pacheco, defendant's actions in this case were not merely simultaneous with the police presence but were clearly in response thereto.

Contrary to the position taken by the majority, the officers'

---

* It is unnecessary in this case to utilize the theory of abandonment to dissipate any taint flowing from illegal police conduct (see, People v Boodle, 47 NY2d 398, 404) since no illegal police conduct preceded defendant's actions; defendant reacted to a mere passive police presence.

testimony regarding defendant's actions after placing the bag on the newstand shelf is not conflicting. According to both officers' accounts, defendant then turned around and walked in the same direction in which she had been walking when they initially observed her. I fail to see any inconsistency between Ohrnberger's testimony that after defendant placed the bag on the shelf she "walked past [him]" as he was approaching the newsstand and Majett's testimony that after defendant put the bag on the shelf she "walked back towards [the officers]" and Ohrnberger "went and got the bag." No one testified that the two officers were standing together when Majett stopped defendant, if that is what is being suggested; indeed, Majett's testimony does not eliminate the possibility that Ohrnberger was already at the newsstand since he testified that he did not recall where Ohrnberger was at that particular time. In any event, even if there were a conflict between the testimony of Majett and that of Ohrnberger, the majority fails to explain—and I cannot fathom—how that would detract from the conclusion that defendant abandoned the bag.

I believe that the hearing court also erred in suppressing defendant's statement on the ground that at the time she made the statement she had legal representation on prior pending charges. Detective Marrone testified that he did not know that there was a case pending against defendant until she told him so, and there is no evidence that either Officer Majett or Sergeant Ohrnberger was aware that charges against defendant were still pending. Since the police had no actual knowledge of the pendency of prior charges, they did not have an affirmative duty to refrain from questioning defendant. *(See, People v Bertolo,* 65 NY2d 111, 119.)

Thus, I would reverse the order appealed from, deny suppression and remand the matter for further proceedings.