OPINION OF THE COURT
Eugene L. Nardelli, J.
Defendants have been accused of the crimes of criminal possession of a controlled substance in the first degree and criminal possession of a weapon in the third degree. They are charged with possessing substances of an aggregate weight of four ounces or more containing cocaine and with possessing a .357 Magnum not in their homes or places of business.
Defendants have moved for suppression of tangible property.
FACTS
Sergeant Delgado is an officer of 14 years’ experience in narcotics enforcement. At about 4:00 p.m. on October 14, 1986, a member of the team he headed told him that a registered informant had phoned and said that he had been negotiating for a kilogram of cocaine with a female Hispanic who would arrive with it from Miami on Eastern Flight 414 at La Guardia at 11:30 p.m. The informant had not given Delgado information previously. He and his wife had been arrested on a narcotics charge. She was still incarcerated. His productive cooperation was to benefit him and her. Delgado, his undercover officer, and the informant drove out to La Guardia at 10:00 p.m. and coordinated his plans with the airline and the Port Authority police; it was arranged that a drug-sniffing dog and its handler would be available. When Hernandez left the plane with Castro, the informant pointed her out. Delgado observed Castro twice run halfway up a flight of stairs, stop suddenly, turn around, and look back and forth. Hernandez also looked "all around” and went into the ladies room, where another officer observed her vomiting. Each was carrying a piece of hand luggage. Hernandez pointed out a black and tan suitbag on the luggage conveyor, which Castro took. When the pair reached the sidewalk, Delgado identified himself, asked Castro his name, and took the bags Castro was carrying. Police took the bag Hernandez was carrying. Other police were standing around defendants and they were not free to leave. Delgado asked them to come back to the luggage area, and they did so. The luggage area is part of the public area, *696 not a separate room. Delgado brought them there because people were starting to mill around on the sidewalk and because an Eastern manager, other police, and the canine unit were there. The dog sniffed the luggage and did not react. Delgado then asked for permission to search the luggage; each defendant consented but each denied that the black and tan suitbag was his. Hernandez said her bag was still on the conveyor, where Delgado took her, and where she pointed out a suitbag. Delgado brought it back, Hernandez said it and her hand baggage were hers, and Delgado opened it. It proved to be the property of a Canadian national and patently not hers. Castro consented to the search of his hand luggage but again denied that the black and tan suitbag was his. Delgado opened the black and tan suitbag and found a kilogram of cocaine, a gun wrapped in a red and gray sock, and 13 rounds of ammunition. Delgado placed both defendants under arrest. At no time had weapons been displayed. The police then took defendants to an office for the paperwork and further search of the luggage. In Castro’s hand luggage Delgado found seven socks identical in color and size to the one in which the gun was wrapped. About half an hour was spent in the office.
CONCLUSIONS OF LAW
Defendants argue from Arkansas v Sanders (442 US 753) and United States v Chadwick (433 US 1) that luggage may be searched only (1) pursuant to a warrant or (2) where there is probable cause coupled with exigent circumstances. There is, however, nothing in those cases which prohibits a search of luggage by consent, for instance, or a search of luggage that has been abandoned. Abandoned property is not protected by the Constitution from search and seizure. (Abel v United States, 362 US 217; Hester v United States, 265 US 57.) The issues presented here are: (1) was the black and tan suitbag abandoned by defendants; and, since abandonment must be voluntary and not coerced by unlawful police action, (2) were the initial stop of defendants by Delgado and the subsequent conduct of the police up to the time of such abandonment proper.
Abandonment "Abandonment does not require performing a ritual; rather it is a question of intent.” (United States v Cowan, 396 F2d 83, 87 [2d Cir].) That intent "may be inferred from words spoken, acts done, and other objective facts.” (United States v Colbert, 474 F2d 174, 176 [5th Cir].) Most *697 commonly, abandonment occurs without a verbal renunciation of ownership or possession as a suspect discards some article or a container or vehicle containing incriminating evidence. (See, People v Bergerson, 105 AD2d 867 [3d Dept]; United States v Cowan, supra; United States v Williams, 569 F2d 823 [5th Cir].) "Mere denial of ownership” of a bag in an automobile, on the other hand, where "[t]he bag was not thrown from the car”, has been distinguished from denial of ownership of property on a public street where no continuing possession is indicated and has been described as not giving proof of the intent to abandon. (People v Cameron, 73 Misc 2d 790, 797 [Sup Ct, NY County].) And in State v Casey (59 NC App 99, 296 SE2d 473), a suspect, asked if the bags he was carrying in an airport were his, responded, "No”, and stated that they belonged to another; it was held that his denial of ownership did not constitute an abandonment. Professor LaFave has argued from Cameron (supra) and Casey (supra) that denials of ownership of carried luggage in airports does not constitute abandonment. (1 LaFave, Search and Seizure, § 2.6 [b], at 474-475 [2d ed 1987].) LaFave himself, however, cites as illustrative of the difference between strict property law concept of abandonment and the Fourth Amendment concept the observation of the Supreme Court of Minnesota in City of St. Paul v Vaughn (306 Minn 337, 346, 237 NW2d 365, 371), that " 'what is abandoned is not necessarily the defendant’s property, but his reasonable expectation of privacy therein.’ ” (LaFave, op. cit, at 465.)
That distinction is implicitly recognized in People v D’Ambrosio (28 AD2d 1130), where the Second Department said: "Defendant’s denial of ownership of the suitcase can only be construed as an intention not to claim possession and was an effective abandonment of the suitcase.” People v Chitty (40 Misc 2d 580 [Sup Ct, NY County]), cited in D’Ambrosio involved an attaché case which defendant had brought into a restaurant and set on the floor next to him in a booth with others. The police asked him whether the case belonged to him and he denied any knowledge of or connection with it. The court noted that while defendant had not physically discarded the case, the requisite intent was shown; it held that "his verbal discarding of the attache case leaves him without an interest or right in its contents, as well as depriving him from successfully maintaining this motion” (40 Misc 2d, supra, at 582; accord, People v Patino, 97 AD2d 552 [2d Dept 1983]; United States v Kendall, 655 F2d 199 [9th Cir]; United States *698 v Colbert, 474 F2d 176, supra; Lurie v Oberhauser, 431 F2d 330 [9th Cir]; People v Grainger, 117 Mich App 740, 324 NW2d 762; State v Morrow, 128 Ariz 309, 625 P2d 898; see also, People v Barronette, 129 Misc 2d 798 [Sup Ct, Queens County]).
The issue here is one of intent. The act of physically discarding an object may show an intent to abandon it in the Fourth Amendment sense even though the circumstances indicate a hope or even an expectation of returning to recover the object and asserting one’s rights therein against the world. (United States v Williams, 569 F2d 823, 826, supra; see also, People v Fraumeni, 108 AD2d 756 [2d Dept] [package of narcotics dropped to the ground between two trees as defendant walked rapidly away].) But we have the faculty of speech and can express our intent verbally very well. In the instant case we are concerned with the effect of verbal communication: the request by Delgado for permission from Castro to search the black and tan suitbag and Castro’s repeated assertions that it was not his. If Castro’s reply had any meaning in that context it was that he had no expectation of privacy therein which he was capable of waiving. He had abandoned even any hope akin to that which Fraumeni (supra) may have retained of returning, if his drop had not been noticed, and recovering the dropped package scot-free.
Hernandez too had said the bag was not hers. But she clearly had no rights of privacy therein (or in Castro’s small bag) even before any abandonment. The placing of property in the bag of another cannot give one a reasonable expectation of privacy in such bag. (Rawlings v Kentucky, 448 US 98; People v Buckley, 81 AD2d 511 [1st Dept].)
Propriety of Police Conduct. An unverified tip by a known informant on the scene who had once before provided information to a police officer (though that previous tip could not be verified and did not result in any police action) may carry enough indicia of reliability to justify a forcible stop even though it might be insufficient for an arrest or a search warrant. (Adams v Williams, 407 US 143.) Even in the absence of an informant’s tip, certain constraints on personal liberty constituting seizures under the Fourth Amendment may be justified without probable cause to arrest; and in the case of an airport detention the reasonableness of such detention will be judged in the light of the public interest involved in the suppression of illegal transactions in drugs or of other serious crime. (Florida v Rodriguez, 469 US 1, 5; Florida v Royer, 460 US 491, 498-499; see, United States v Place, 462 US *699 696, 704-705.) In the instant case the informant had also been brought to the scene; he had identified defendant Hernandez; he had explained the basis of his information, that he had that day negotiated with Hernandez by telephone for the purchase of a kilogram of cocaine; he could profit only from reliable information, he and his wife having been arrested on a narcotics charge and his wife being still in prison; and defendant Castro had displayed erratic and suspicious behavior inconsistent with innocence. It is clear that at least a forcible stop was justified here. Moreover, warrantless seizures of personal luggage from the custody of the owner for the purpose of pursuing a limited cause of investigation short of opening the luggage are proper when based on reasonable, articulable suspicion, based on objective facts, that the luggage contains contraband. (See, United States v Place, supra, at 702.) In Place the purpose of the seizure of luggage was, as here, to subject it to a canine sniff test, a procedure not constituting a search within the meaning of the Fourth Amendment and not requiring probable cause (supra, at 707). There, however, the 90-minute delay (the luggage was taken from La Guardia to Kennedy Airport) was held to be too long. The court noted that the New York agents had known the time of Place’s arrival and had had time to arrange things in order to minimize the intrusion but had not done so (supra, at 709). In the instant case the officers did make preparations to expedite the canine search and indeed it was carried on expeditiously. The only delay was occasioned by Hernandez’s diversionary tactic of claiming that her suitbag was still on the conveyor, which resulted in a return to the conveyor, the picking up of the suitbag of the Canadian national, and the search of such bag. Even with that diversion, the whole process before arrest took only a half hour and involved only minimal movement of defendants and their baggage. The scope of an investigative detention of a person’s luggage on less than probable cause is defined by the limitations applicable to investigative detentions of the person (supra, at 708-709). There is no requirement that persons subject to such stops not be moved reasonable distances (People v Hicks, 68 NY2d 234). Moving defendants and their luggage away from the milling spectators in the sidewalk area to the still public but less crowded baggage area was eminently reasonable.
The conduct of the police was based on reasonable and articulable suspicion and was proper. The ensuing abandonment was in no way tainted.
*700 The court finds that defendants were not arrested until after the discovery of the contraband in the black and tan suitbag. Consequently, it has not found it necessary to consider whether or not the police had probable cause to arrest defendants on first approaching them on the sidewalk. Much of defendants’ argument implies that the police were obliged to obtain arrest and search warrants before going to the airport. No one, however, has a right to be arrested.
DECISION
Defendants’ motions are in all respects denied.