■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ALBERT F. RIELLY, Appellant.—Appeal by the defendant from a judgment of the Supreme Court, Queens County (Bambrick, J.), rendered November 15, 1989, convicting him of murder in the second degree and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Browne, J.), of that branch of the defendant's omnibus motion which was to suppress physical evidence.

Ordered that the judgment is affirmed.

Although the United States Supreme Court has rejected the notion of a homicide-scene exception to requirements for a search warrant, that Court has held that when the police come upon the scene of a homicide, they may, under the "emergency" doctrine, make a prompt warrantless search of the area to see if there are other victims or if a killer is still on the premises. They may also seize any evidence that is in plain view during the course of their legitimate emergency investigation *(see, Mincey v Arizona,* 437 US 385, 392-393). Furthermore, in New York, the "emergency" doctrine has been held to allow a limited search in order to locate the victim, or discover the perpetrator, or to locate the scene of the crime, or another person who may have been injured *(see, People v Hodge,* 44 NY2d 553, 558). The scope and duration of the search must be limited by and reasonably related to the exigencies of the situation *(see, People v Cohen,* 87 AD2d 77, 82-83, *affd* 58 NY2d 844, *cert denied* 461 US 930; *see also, People v Taper,* 105 AD2d 813, 814).

Here, the police received a radio transmission to go to the defendant's home because there might be a dead body on the premises. When they arrived, the defendant's four-year-old son let them inside. They found the victim lying on the floor in the bedroom and bleeding from a bullet wound to the side of her head. She was apparently deceased. Under the circumstances of this case, entry into the defendant's home was

justified as an emergency measure *(see, People v Reilly,* 155 AD2d 961, 962). Moreover, the jewelry on the victim's body and the knife that was found lying on the bedroom floor were in plain view. Accordingly, seizure of that evidence was lawful *(see, People v Anderson,* 127 AD2d 774, 775; *People v Taper, supra).*

The defendant has no standing to challenge seizure of a letter and the .38 caliber shell which were found in his 17-year-old son's schoolbag, because he failed to establish that he had a reasonable expectation of privacy in the schoolbag *(see, People v McCary,* 173 AD2d 856, 857-858; *People v Mills,* 159 AD2d 520). Apparently, the defendant's son removed those items from a closet and placed them in his schoolbag at the defendant's request. The placing of property in someone else's bag does not give one a reasonable expectation of privacy in the bag *(see, People v Castro,* 137 Misc 2d 694, 698, citing *Rawlings v Kentucky,* 448 US 98; and *People v Buckley,* 81 AD2d 511). Thus, the defendant freely relinquished any expectation of privacy in the letter and the .38 caliber shell by giving them to his son *(see, People v Caviness,* 170 AD2d 615).

Moreover, it is well established that the constitutional protection against unlawful searches and seizures is inapplicable to citizens whose actions are private in nature *(see, People v Cooper,* 174 AD2d 770, 772; *People v Hairston,* 144 AD2d 383, 384). Nothing in the record indicates that the victim's family members were acting either at the direction of or in cooperation with the police in searching the defendant's home *(see, People v Cooper, supra,* at 772). Accordingly, suppression of the physical evidence seized was properly denied.

Viewing the evidence adduced at the trial in the light most favorable to the People *(see, People v Contes,* 60 NY2d 620), we find that it was legally sufficient to prove that the defendant intentionally shot and killed his wife with a loaded firearm. A month or two before the shooting, the defendant told his tenant that he was licensed to carry a .38 caliber gun and that he owned such a weapon. He added that "there was no room for [his wife because] she knew too much". On the night of the shooting, the defendant's four-year-old son saw him with a gun. Neighbors heard three shots and the defendant was seen leaving the scene in his wife's car. Afterwards, he told several witnesses that he had shot his wife. He also left a note for his older son instructing him to take care of his younger brother. The testimony of the People's experts established that the victim had been shot three times with a .38 caliber revolver and that she would not have been able to struggle after any

one of the wounds had been inflicted. Upon the exercise of our factual review power, we are satisfied that the verdict was not against the weight of the evidence *(see,* CPL 470.15 [5]).

The evidence that the victim was shot three times at close range with bullets striking her in the head and other vital parts of her body clearly established beyond a reasonable doubt that the defendant's intent was to cause death *(see, People v Boo Wat Cheung,* 141 AD2d 556, 557; *see also, People v Bova,* 122 AD2d 798, 799). Moreover, the defendant's version of the shooting, that the gun went off accidentally in a struggle with the victim, if credited, would only have supported an acquittal on the basis of an accidental shooting. Hence, neither account of the shooting reasonably could have supported a verdict finding the defendant guilty of manslaughter in the first degree or manslaughter in the second degree, and the court properly declined to charge those offenses *(see, People v Thomches,* 172 AD2d 786, 787). Likewise, the court properly denied the defendant's request for a justification charge as lacking a reasonable factual basis *(see, People v Pruitt,* 190 AD2d 692 [decided herewith]; *People v Reynoso,* 73 NY2d 816, 818; *People v Watts,* 57 NY2d 299; *People v Scarborough,* 49 NY2d 364, 373-374).

We have considered the defendant's remaining contentions, including those contained in his supplemental *pro se* brief, and find that they are either unpreserved for appellate review *(see,* CPL 470.05 [2]), or that they do not warrant reversal. Rosenblatt, J. P., Lawrence, Pizzuto and Santucci, JJ., concur.