UNITED STATES of America

v.

Andre Keith KELLY.

No. 1:98–CR–123.

United States District Court,
E.D. Texas,
Beaumont Division.

March 17, 1999.

Keith Giblin, Assistant U.S. Attorney, Beaumont, TX, for plaintiff.

E.J. Van Buren, Jr., Houston, TX, for defendant.

### MEMORANDUM AND ORDER

COBB, District Judge.

On August 28, 1998, Andre Keith Kelly was stopped on Interstate 10 near the city limits of Beaumont, Texas, by Deputy Sheriff Ener of Jefferson County, Texas, for following too closely an 18–wheel truck at a speed of approximately 60 miles per hour. Kelly was within two to three car lengths (50–60 feet) of the rear end of the truck. Simple division shows that 60 miles per hour is 88 feet per second, and it is common knowledge the fastest reaction time is from three-fourths to one second.

Following too closely is a misdemeanor under the Texas Transportation Code, *United States v. Inocencio*, 40 F.3d 716, at 727 (5th Cir.1994). Except for speeding or violating the Open Container Act, all violations of the traffic code are misdemeanors subject to arrest, not merely for the issuance of a citation. *United States v. Castro*, 166 F.3d 728 *(en banc)* (1999).

The stop resulted in the discovery of crack cocaine in the passenger's purse. The passenger and Kelly were indicted by a federal grand jury on September 9, 1998. A motion to suppress filed by Kelly was heard by this court on February 18, 1999.

Sergeant Robert Ener, a Jefferson County, Texas, law enforcement officer for eleven years, and who worked in narcotics cases for five and one half years, testified that on August 28, 1998, he was on patrol on Interstate 10 eastbound. At approximately 1:00 a.m. he observed a green Plymouth automobile following an 18–wheel truck and trailer about "two or three" car lengths behind it driving at or near the speed limit on the interstate. In his opinion, based upon his experience, training, and background as a patrol officer, this distance was too close for the Plymouth to be behind the tractor-trailer.

The Plymouth passed one tractor-trailer and pulled in "very close behind another tractor-trailer and followed it 'too closely,'" before finally passing it. Ener activated his emergency lights signaling the Plymouth's driver to pull over and stop.

The driver took an "unusually" long distance to pull to the side of the road. During this time Ener's headlights illuminated the passenger compartment of the Plymouth and Ener said the driver bent or leaned over "as if to give the passenger" some object.

When the Plymouth finally stopped, Ener approached the driver's side of the car, asked the driver to step out and to the rear of the car, and asked for identification and driver's license. The driver was the defendant, Andre Keith Kelly. Ener explained his reason for the traffic stop, and inquired about his domicile and the origin and destination of this trip. The defendant first said he lived in Beaumont on a street which Ener identified as an area in Beaumont that was a "high crime" area where there is known traffic in "street" narcotics, and was coming fro Houston, Texas, known to him as a major source center for cocaine. However, Kelly's driver's license showed he resided in Houston, Texas. During this roadside encounter, Ener said Kelly was unusually nervous, and was upset when he could not immediately produce the rental "papers" for the Plymouth. Kelly said his uncle rented the car in Beaumont, but Kelly left his own car here, drove the rental unit to Houston several days before, and was returning the rental car to Beaumont to have his uncle return it, and Kelly would go back to Houston in his own car. Ener further opined that rental cars are often used by those in narcotics traffic to prevent seizure of their personal automobile if stopped and arrested.

Various signs evidencing extreme nervousness and shaking were further observed by Ener. Ener, by then had become

suspicious and asked for permission to search the car. Kelly consented. Ener had initiated a driver's license check with the Beaumont authorities, and it was while awaiting a response that Kelly voluntarily consented to the search.

The court has reviewed the video tape of the stop, the fairly long time which elapsed from the signal to stop to the final stop by Kelly, as well as the nervous demeanor described above, the request for consent, and Kelly's quick agreement, and finds Ener's testimony accurate.

The passenger, Tynika Chantel McGee, was asked to get out of the vehicle and she promptly complied. She had a fairly large purse with her. Ener testified it made him feel she may have had a weapon in the purse from the manner she clutched it so closely to her. He asked to examine the interior of the purse, and she left it on the passenger seat at his direction, and stepped to the rear of the vehicle.

Instead of a weapon, he found a black nylon bag which was near the top of the purse. The purse was large, and closed with a drawstring. The nylon bag, on the top of all other contents of McGee's purse, felt like it contained, and upon examination, was found to have contained several "cookies" of what appeared to be crack cocaine. Kelly and McGee were then placed under arrest.

When warned by Ener under the *Miranda* decision, neither of the defendants agreed to make any statement or to cooperate. The defendants were handcuffed and placed in the back of the patrol car to await the arrival of a wrecker to tow the Plymouth to a storage compound.

After the defendants were placed in the patrol car, Ener activated a "paddle" microphone attached to a tape recorder in the trunk of his car. The paddle was wedged in a space near the back shelf of the patrol car, and was designed to pick up conversations. The wrecker did not arrive for about thirty minutes and the defendants conversed in considerable detail the events of the evening, their plight, and their future. The recording was played at length at the suppression hearing. The tape contains incriminating statements made by Kelly. These statements were objected to on the ground of "expectation of privacy." The defendants were in custody, handcuffed, and in a rolling jail; i.e., a patrol car, with no possible exit. It strains the court's credulity that there was an expectation of privacy under the circumstances. However, the court does not base its holding upon the taped conversation. Instead, the decision is based upon the testimony of the witnesses, their forthrightness, truthfulness, and the video tape, and the witnesses' candor, demeanor, or lack thereof, and the totality of all the circumstances introduced by the Government, and the defendant Kelly at the hearing on the motion to suppress.

The Government, apparently after promising immunity to Tynika Chantel McGee, called her as a witness. She testified she had known Kelly about three months, and considered him a friend, but was not his "girlfriend," nor did she consider him her common law husband. Kelly called her that night (August 27, 1998), and asked if she wanted to go out after she finished work. She got off from her job at a department store at 9:00 p.m., and agreed to go out with him after work. The trip to Beaumont was not revealed to her by Kelly at that time. She learned of their destination after she was on the highway and notice a sign with BEAUMONT written on it. Kelly explained about the rental car return to his uncle in Beaumont before the police car activated its warning lights. Kelly shoved a drink in her hands so that somehow she could dispose of it, and shoved a black nylon bag toward her and asked her to put it in her purse. He told her to take her purse with her if she was required to get out of the car. She did not know the black nylon bag contained crack cocaine, and had never known or been informed by Kelly he had drugs.

Defendant Kelly was called by his attorney, and the only matter covered in his testimony was that he had an expectation of privacy when he was talking to McGee in the back seat of the patrol car, even though he was under arrest and detention, handcuffed, and headed for jail. He denied none of Ener's or McGee's testimony.

## DISCUSSION

The Fourth Amendment prohibits unreasonable searches and seizures. *United States v. Shabazz*, 993 F.2d 431 (5th Cir. 1993). There is no question but that the stopping of a vehicle and the detention of its occupants is a "seizure" within the meaning of the Fourth Amendment. *Id.* Seizures of motorists who are merely suspected of criminal activity are to be analyzed under the framework established in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Id.* A routine traffic stop is a limited seizure that closely resembles an investigative detention and the appellate courts have used *Terry* to analyze cases in which motorists were stopped for violating traffic laws. *Id.* at 435. Under *Terry*, the judicial inquiry into the reasonableness of a search or seizure "is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances the interference in the first place." *Id.*

A. *The initial stop of Defendant's car was a proper traffic stop for the offense of following too closely.*

■ Here, as in *Shabazz*, Kelly was not merely suspected of criminal activity, but was observed by the detaining officers to commit a traffic offense (failure to maintain a safe distance behind another vehicle). Failure to maintain a safe distance while traveling behind another vehicle is a violation of Texas traffic laws and an officer may legally stop a vehicle for that offense. *See United States v. Inocencio*, 40 F.3d 716, 727–728 (5th Cir.1994).

B. *Under the principles set forth by the U.S. Supreme Court in Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), Kelly has no standing to contest the search of his co-defendant's purse.*

In *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), officers arrived at a residence armed with an arrest warrant. 448 U.S. 98, 100 S.Ct. at 2559. After unsuccessfully searching the home for the person named in the warrant, several officers observed marijuana seeds and left the residence to obtain search warrant. *Id.* One of the officers approached a woman sitting on the couch and ordered her to empty the contents of her purse onto a coffee table. *Id.* Among the contents of the purse were controlled substances. *Id.* The woman and the petitioner were then arrested. *Id.*

■ The petitioner argued to the Supreme Court that he had standing to contest the legality of the search of the woman's purse. 448 U.S. 98, 100 S.Ct. at 2560. The Supreme Court rejected this, holding the central issue was whether or not the petitioner had a legitimate expectation of privacy in the area searched; i.e., the purse. *Id.* The Court held that petitioner had no reasonable expectation of privacy in the woman's purse to provide standing to contest the search. *Id.* In the case at bar, Kelly had no expectation of privacy in McGee's purse, and therefore, has no standing to contest the search.

In *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the principles articulated in *Terry v. Ohio* were applied to automobiles. *United States v. Coleman*, 969 F.2d 126, 131 (5th Cir.1992). Under *Long*, "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable believe based on specific and articulable facts which, taken together with the rationale inferences from those facts, reason-

**628**

ably warrant the officer in believing that the suspect is dangerous and may gain immediate control of the weapon." *Id.* To determine whether objects in a car contain weapons, the officer is authorized to touch or even open those objects. *Id.*

■ Here, in this case, the Government showed that Officer Ener had a reasonable believe that McGee's purse might contain a weapon, and, therefore, the search of the purse was justified under the Supreme Court's holding in *Michigan v. Long.*

The stop and the search of McGee's purse was valid, and the fruits of the search, 13 "cookies" of cocaine base, is admissible upon the trial on the merits.

The motion to suppress filed by the Defendant Andre Keith Kelly is in all things DENIED and OVERRULED.