**STATE of Iowa, Plaintiff–Appellee,**

v.

**Torrey T. BROWN, Defendant–Appellant.**

No. 99–99.

Court of Appeals of Iowa.

Feb. 9, 2000.

Linda Del Gallo, State Appellate Defender, and David Arthur Adams, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee.

Heard by STREIT, P.J., and HECHT and VAITHESWARAN, JJ.

STREIT, P.J.

"I might have been a gold-fish in a glass bowl for all the privacy I got." Saki, *The Innocence of Reginald* (1904), *in* The Quotable Lawyer, 252 (David Shrager & Elizabeth Frost eds., 1986). Such was the cry of defendant, Torrey Brown, when his host consented to the search of the guestroom in which he was staying. The officers, searching for a gun at the residence, discovered Brown's large stash of crack co-

caine in his girlfriend's jacket. Brown claims the search violated the Fourth Amendment and the trial court erred in denying his motion to suppress. Because Brown's host had authority to consent to the search and Brown failed to have a legitimate expectation of privacy in his girlfriend's jacket, we affirm his conviction.

## I. Background Facts & Proceedings.

In the early morning hours of a June day, Lorenzo Dollison, upset with his house guests, left his Waterloo apartment and trudged down to the local police station. At the station, he told the police a woman just brought a gun into his home and left with the promise of returning with more. Dollison asked for help in removing the weapon. After being assured that officers were on their way, Dollison returned home.

Shortly thereafter, Dollison greeted the responding officers outside his home and again recounted his story of the weapon. After confirming Dollison was the only tenant, officers accompanied him into the apartment. Dollison told the officers the weapon was in a certain bedroom. When Dollison opened the door to the bedroom, the officers found the defendant, Brown, and his girlfriend, Krista Grant, lying naked on the bed. Brown and Grant had recently arrived in Waterloo from Chicago. Dollison had allowed Brown and Grant to stay with him until they could find a place of their own. In exchange for Dollison's hospitality, Brown gave him some crack cocaine and a small amount of money. The couple quickly wore out their welcome, and Dollison requested the couple leave on two separate occasions.

The officers ordered the couple to dress and told them they were looking for a gun. While dressing, Grant hid the crack cocaine in her jacket and, at the behest of Brown, hid the ammunition clip of the rifle

in her underwear. The couple admitted seeing the weapon and suggested it may be between the bed's mattress and box spring. The couple proceeded to lift the mattress, but an officer ordered them to stop and told them to leave the room. In searching the room, an officer picked up Grant's jacket and noticed it was unusually heavy and contained a large bulge in one pocket. Fearing it was the weapon,[1] the officer unzipped the pocket and discovered the crack cocaine. The officer then directed the couple to get their personal belongings out of the room. In picking up their personal items, Brown told Grant numerous times to get her jacket from the officer. She denied it was her jacket, and the couple left the room leaving the jacket with the officer. The officer arrested the couple for possession of the crack cocaine. The gun, a .22 caliber rifle, was later discovered under the bed.

Brown and Grant later confessed to possessing the crack cocaine and to knowing the location of the rifle. The State charged Brown with possession with intent to deliver more than five grams but less than fifty grams of crack cocaine while in the immediate possession of a firearm, a drug tax stamp violation, and possession of a firearm by a felon. See Iowa Code §§ 124.401(1)(a), 124.401(1)(e), 453B.12, 724.26 (1997). Brown sought to suppress the admission of the crack cocaine, claiming the officers violated his Fourth Amendment right to be free from unreasonable search and seizure. The trial court denied the motion to suppress, finding the discovery of the crack inadvertent and that Brown acquiesced to the search. Brown later waived his right to a jury trial and agreed to submit the case to the court on stipulated facts. The court found him guilty of possession with intent to deliver crack cocaine while in immediate posses-

---

1. In the course of Dollison's narrative at the police station, there was a miscommunication as to the type of gun involved. Dollison said he told the officer the gun was a .22 caliber rifle. The officer, in dispatching a unit to Dollison's apartment, described the weapon as a .22 caliber pistol.

sion of a firearm and sentenced him accordingly.

Brown now appeals, claiming the trial court erred in denying his motion to suppress and there was insufficient evidence he was in immediate possession of a firearm.

## II. The State's Failure to Raise Brown's Expectation of Privacy.

■■■ Brown claims the State is estopped from arguing he lacked a legitimate expectation of privacy in the room or the jacket, because it did not address the issue in the motion to suppress. The State can lose its right to claim a defendant had no legitimate expectation of privacy "when it has failed to raise such questions in a timely fashion during the litigation." *Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 1646, 68 L.Ed.2d 38, 44 (1981). The State, however, in its closing comments on the motion to suppress stated, "Defendant here has no standing, no privacy issue." Defense counsel responded, "The notion that there's no standing . . . escapes me."[2] Although the State did not expound upon its statement that Brown lacked a legitimate expectation of privacy, it alerted both defense counsel and the court of the issue. Simply because the district court did not rely on expectation of privacy in denying the motion to suppress does not prevent the State from arguing it on appeal. *See United States v. Elwood*, 993 F.2d 1146, 1152 & n. 26 (5th Cir.1993). Because the State's brief argument regarding Brown's expectation of

privacy was minimally sufficient, we will address whether Brown had a legitimate expectation of privacy in the room and in his girlfriend's jacket.

## III. The Search.

Brown first contends the search of the bedroom was unreasonable under the Fourth Amendment. He claims as a overnight guest he had a privacy interest and the officers were not operating under any legitimate exception to the warrant requirement.

■■■ **A. Standard of Review.** When assessing an alleged violation of a constitutional right, we review de novo the totality of the circumstances as shown by the entire record. *State v. Breuer*, 577 N.W.2d 41, 44 (Iowa 1998). We consider both the evidence presented during the suppression hearing and that introduced at trial. *State v. Jackson*, 542 N.W.2d 842, 844 (Iowa 1996).

■■■ **B. The Bedroom.** Brown contends the search of the bedroom violated the Fourth Amendment because he had a privacy interest in the bedroom and the owner of the home had no authority to consent to the search. The Fourth Amendment to the United States Constitution secures the right of the people to be free from unreasonable government searches.[3] U.S. Const. amend. IV. The Fourth Amendment, however, is not a general societal protection, but rather "a personal right that must be invoked by an

---

2. Traditionally, the rubric of "standing" was used to determine if a defendant could litigate the lawfulness of a government search. The term "standing," however, is now viewed with disfavor by the United States Supreme Court as it improperly connotes an abandoned notion of law. *See Minnesota v. Carter*, 525 U.S. 83, 87, 119 S.Ct. 469, 472, 142 L.Ed.2d 373, 379 (1998). Although lacking an easily recognizable shorthand term, the appropriate standard in determining whether a defendant may litigate a search is whether the defendant "personally has an expectation of privacy in the place searched, and that his expectation is reasonable." *Id.* at 88, 119

S.Ct. at 472, 142 L.Ed.2d at 379 (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)).

3. Brown asserts the search violated both the Fourth Amendment to United States Constitution and article I, section 8, of the Iowa Constitution. Because, "the language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution to track with federal interpretations of the Fourth Amendment" we will address his arguments jointly. *State v. Showalter*, 427 N.W.2d 166, 168 (Iowa 1988).

individual." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 473, 142 L.Ed.2d 373, 379 (1998). The extent of protection it affords an individual depends largely on the location of the person seeking its safeguards. *Id.* at 88, 119 S.Ct. at 473, 142 L.Ed.2d at 379. The capacity to invoke the protections of the Fourth Amendment depends "upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978). It is incumbent upon the defendant to show he had a legitimate expectation of privacy in order to litigate the lawfulness of the government search. *State v. Osborn*, 200 N.W.2d 798, 803 (Iowa 1972). A legitimate expectation of privacy in an invaded place, however, is not so narrowly construed as to mean only a person's home. Rather, even an overnight guest has a legitimate expectation of privacy in the host's home. *Minnesota v. Olson*, 495 U.S. 91, 99–100, 110 S.Ct. 1684, 1689–90, 109 L.Ed.2d 85, 95 (1990). That expectation of privacy, however, is applicable only to the unwarranted actions of government actors. It does ensure the guest's "possessions will not be disturbed by anyone but [the] host and those [the] host allows inside." *Id.* at 99, 110 S.Ct. at 1689, 109 L.Ed.2d at 94. Thus, an overnight guest's legitimate expectation of privacy does not vitiate the homeowner's ability to consent to a search of his home. *See United States v. Oates*, 173 F.3d 651, 656 (8th Cir.1999); *United States v. Wright*, 971 F.2d 176, 180 (8th Cir.1992) ("[The homeowner] possessed authority to consent to a search of his own home, including the guest bedroom where [defendant] spent the evening."); *United States v. Salinas–Cano*, 959 F.2d 861, 863 (10th Cir. 1992); *United States v. Isom*, 588 F.2d 858, 860–61 (2d Cir.1978) ("As the lawful tenant, [the homeowner] clearly had authority to consent to a search of her premises, even though a 'guest' was also present."). A consent search of a home is only proper if the police reasonably believed the person granting the police permission to search had the authority to do so. *See Illinois v. Rodriguez*, 497 U.S. 177, 185–86, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148, 159–60 (1990).

■ Although Brown had a legitimate expectation of privacy as an overnight guest, Dollison's consent countermands that privacy interest. Dollison's permission to search his apartment is undisputed. *See Oates*, 173 F.3d at 656. Dollison was the sole tenant on the lease. *See id.* Dollison had free access to all rooms in his apartment. *See id.* The room searched was normally Dollison's private bedroom. Dollison requested Brown leave the residence, and he failed to comply. *See Oates*, 173 F.3d at 656; *Isom*, 588 F.2d at 860–61 ("[E]ven if appellant had some right, doubtful at best, as a 'licensee' to countermand [the homeowner's] consent to the search, [the homeowner] had undoubtedly revoked the 'license' by asking appellant to leave her apartment."). Under the totality of the circumstances, we find Dollison had the authority to consent to the search of the bedroom in which Brown was located.

**C. The Jacket.** Brown next claims the trial court erred in denying his motion to suppress because he had a legitimate expectation of privacy in the searched jacket and the government was not operating under an exception to the warrant requirement.

■ Brown bears the burden of proving he had a legitimate expectation of privacy in his girlfriend's jacket. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641 (1980). Circumstances indicating an accused has a legitimate expectation of privacy in another's personal items include: (1) the nature of the relationship between the accused and the third party, (2) whether a bailor-bailee relationship existed between the parties, (3) the frequency with which that bailor-bailee relationship existed, (4) the accused's right to exclude others from accessing the third party's items, (5) the

accused's possessory interest in the item seized, and (6) whether the accused expressed a subjective expectation of privacy in the area searched. *Id.* at 105, 100 S.Ct. at 2561, 65 L.Ed.2d at 641–42.

In applying the totality of circumstances surrounding this unique case, we find Brown failed to show he had a legitimate expectation of privacy in his girlfriend's jacket. First, the relationship between Brown and Grant is unclear. They held themselves out as a couple, but Brown failed to offer evidence as to the nature of their relationship. In *Rawlings,* the Court found the defendant had a minimal expectation of privacy in his girlfriend's purse as they had only recently become acquainted. *Id.* As it is Brown's burden to show a legitimate expectation of privacy in Grant's jacket, failure to detail the nature of his relationship with Grant does little to establish his claim. Second, although there was evidence that Grant had secreted Brown's drugs on previous occasions, the series of events particular to this case does not establish a true bailor-bailee relationship. Brown stated in his confession, "I think the crack was out and I think Krista put it in her coat." Brown did not ask Grant to take charge of his drugs. Grant acted of her volition, thus negating any bailor-bailee relationship. There is nothing to indicate Brown had a right to exclude others from accessing the jacket. In fact when given the opportunity to assert some type of privacy, he demanded Grant get *her* jacket and when she refused he left it with the officer. Finally, placing so much crack cocaine in a jacket pocket that it causes it to noticeably bulge is not the type of precaution normally undertaken to maintain privacy. *Id.* Thus, weighing the totality of the circumstances, we find Brown failed to meet his burden of showing he had a legitimate expectation of privacy in his girlfriend's coat. *See United States v. Kelly,* 46 F.Supp.2d 624, 627 (E.D.Tex.1999) (ruling defendant had no expectation of privacy in a friend's purse); *People v. Whisler,* 724 P.2d 648, 649–50

(Colo.1986) (ruling defendant had no expectation of privacy in his girlfriend's suitcase); *Gilbert v. State,* 159 Ga.App. 326, 283 S.E.2d 361, 363 (1981) (ruling defendant had no expectation of privacy in companion's jeans); *People v. Rielly,* 190 A.D.2d 695, 593 N.Y.S.2d 275, 277 (N.Y.App.Div.1993) (ruling defendant had no expectation of privacy in his son's backpack); *People v. McCary,* 173 A.D.2d 856, 570 N.Y.S.2d 842, 844 (N.Y.App.Div.1991) (ruling defendant had no expectation of privacy in companion's cosmetic case); *State v. Hudson,* 103 N.C.App. 708, 407 S.E.2d 583, 589 (1991) (ruling defendant had no expectation of privacy in friend's purse). Brown would not have had an expectation of privacy in whatever place Grant happened to choose to hide the contraband, such as her underwear or coat. The expectation does not somehow attach itself to a particular item of property and then travel with it wherever it may land. Because Brown failed to show a legitimate expectation of privacy, we need not reach the substance of his alleged constitutional violation. The trial court properly denied Brown's motion to suppress.

### IV. The Sufficiency of the Evidence.

Finally, Brown contends there was insufficient evidence to support the court's finding he was in immediate possession or control of a firearm pursuant to Iowa Code section 124.401(1)(e).

**A. Standard of Review.** We review sufficiency of the evidence claims for errors at law. Iowa R.App.P. 4. We are bound by the jury verdict unless the verdict is not supported by substantial evidence. *State v. Lewis,* 514 N.W.2d 63, 65–66 (Iowa 1994). In making this determination, we must consider all the evidence in the light most favorable to the State. *State v. Peck,* 539 N.W.2d 170, 172 (Iowa 1995). We accept all legitimate inferences that may fairly and reasonably be deducted from the evidence. *State v. Bayles,* 551 N.W.2d 600, 608 (Iowa 1996). Evidence is substantial if it could convince a rational

fact finder the defendant is guilty beyond a reasonable doubt. *Id.* Direct and circumstantial evidence are equally probative; however, evidence that merely raises suspicion, speculation, or conjecture is insufficient. *See id.*

■ **B. The Merits.** Iowa Code section 124.401(1)(e) provides:

A person in the immediate possession or control of a firearm while participating in a violation of this subsection shall be sentenced to two times the term otherwise imposed by law, and no such judgment, sentence, or part thereof shall be deferred or suspended.

Our supreme court has previously defined and noted a distinction between the concepts of "immediate possession" and "immediate control." *See State v. Eickelberg,* 574 N.W.2d 1, 4 (Iowa 1997). In *Eickelberg,* the court stated:

[W]hile immediate possession, as found in section 124.401(1)(e), may require the firearm to be located on the defendant's person, *immediate control necessitates only that the firearm be in such close proximity to the defendant as to enable him to claim immediate dominion over the firearm.*

*Id.* (emphasis added). Brown admitted to knowing the location of the gun both when officers first arrived and later in his confession. In fact, he ordered his girlfriend to hide the ammunition clip to the rifle in her underwear. Based on this evidence, it was reasonable for the court to conclude Brown had knowledge of the weapon and it was within his immediate control. The sentence enhancement is affirmed.

**AFFIRMED.**