**F.K., Mother, Plaintiff,**

v.

**IOWA DISTRICT COURT FOR POLK COUNTY, Defendant.**

No. 99–0095.

Supreme Court of Iowa.

July 5, 2001.

As Amended on Denial of Rehearing July 27, 2001.

James A. Benzoni of Benzoni Law Office, P.L.C., Des Moines, for plaintiff.

Thomas J. Miller, Attorney General, Charles K. Phillips, Assistant Attorney General, and Cory McClure, Assistant County Attorney, for defendant.

Mike Bandstra, Des Moines, for minor child.

NEUMAN, Justice.

This certiorari action tests the legality of a juvenile court's ruling on the constitutionality of the statute governing emergency removal orders, Iowa Code section 232.78 (1997). Because we are convinced that the certiorari plaintiff cannot successfully assail the statute on Fourth Amendments grounds, nor does the statutory scheme violate the due process clauses of either the United States or Iowa Constitutions, we vacate a contrary decision of the court of appeals and annul the writ.

## I. Background Facts and Proceedings.

Underlying the constitutional issues presented here was a case involving Felicia, a young mother, and Michael, her infant son. When the child was three months old, the Iowa Department of Human Services (DHS) filed a written ex parte application with the juvenile court to remove Michael from the custody of his mother. The application gave the following reasons for removal:

> Two older siblings have been removed [and] parental rights terminated. The mother has a history of mental illness [and] is not med[ication] compliant. She is not able to care for her children. Michael is on an apnea monitor subsequent to an apnea episode during which he stopped breathing. The mother has not been compliant w[ith] VNS [Visiting Nurse Services] [and] has missed at least one medical appointment for the child.

The application also asserted that immediate removal was necessary to avoid imminent danger to the child's life or health, reasonable cause existed to believe that asking Felicia for consent to remove the child would cause her to take flight, and there was insufficient time to file a child in

need of assistance (CINA) petition and hold a hearing thereon prior to removal.

The application was evidently accompanied by an unreported conversation between the DHS child protection worker and the issuing judge prior to the grant of the application. Based on the information received, the court issued an ex parte removal order pursuant to Iowa Code section 232.78, which provided:

1. The juvenile court may enter an ex parte order directing a peace officer or a juvenile court officer to take custody of a child before or after the filing of a petition under this chapter provided all of the following apply:

a. The person responsible for the care of the child is absent, or though present, was asked and refused to consent to the removal of the child and was informed of an intent to apply for an order under this section, or there is reasonable cause to believe that a request for consent would further endanger the child, or there is reasonable cause to believe that a request for consent will cause the parent, guardian, or legal custodian to take flight with the child.

b. It appears that the child's immediate removal is necessary to avoid imminent danger to the child's life or health.

c. There is not enough time to file a petition and hold a hearing under section 232.95.[1]

The court's order placed Michael in the temporary legal custody of the DHS pending a post-removal hearing. Peace officers directed to take custody of Michael were unable to locate him or Felicia over the weekend; the child was not removed from his mother's custody until the following Monday morning. That same day a CINA petition was filed. The petition alleged that Michael was a child in need of assistance because of Felicia's failure to "exercise a reasonable degree of care in supervising" him, see Iowa Code § 232.2(6)(c)(2), and Felicia's "mental capacity or condition," which prevented her from caring for Michael. See Iowa Code § 232.2(6)(n). DHS filed a child abuse report the same day, documenting Felicia's lack of parenting skills.

The removal hearing, scheduled in conformity with Iowa Rule of Juvenile Procedure 4.6,[2] was continued by agreement of the parties, and combined with the adjudication hearing on the CINA petition. Meanwhile, Felicia moved to Texas. She eventually stipulated to the CINA adjudication but reserved the right to contest Michael's initial removal. In that connection, her counsel filed the document that is the subject of these proceedings—a "Motion to Review Removal Application by Same Standard as Search Warrants." The court reserved its ruling on the motion. A dispositional order was entered in the CINA case and, based on Felicia's abandonment of the child, the case proceeded toward termination.

After the CINA case, but before the termination hearing, the juvenile court ruled on Felicia's motion. It rejected Felicia's constitutional claim that removal ap-

1. In 1998, the legislature amended section 232.78. *See* 1998 Iowa Acts ch. 1190, §§ 4–6. Subsection (1)(d) now provides that "[t]he application for the [ex parte removal] order [must] include[ ] a statement of the facts to support the findings specified in paragraphs 'a', 'b', and 'c'." Iowa Code § 232.78(1)(d) (1999).

2. The rule provides that "[w]henever a child has been removed pursuant to Iowa Code section 232.78 ... a hearing under Iowa Code section 232.95 shall be held within ten days...." Iowa R. Juv. P. 4.6.

plications must be made on oath or affirmation, and that the court—just as in the case of a search warrant—must base its decision solely on the facts contained within the "four corners" of the written document.[3] Instead the court reasoned that section 232.78, and the accompanying statutes and rules governing emergency removals, require greater scrutiny and a higher level of proof than warrants based solely on probable cause. Accordingly the court found that section 232.78 violated neither the Warrant Clause of the Fourth Amendment of the United States Constitution nor article I, section 8 of the Iowa Constitution, or the Due Process Clause of either constitution.

Felicia appealed both the court's ruling on the motion as well as the decree terminating her parental rights that followed shortly thereafter. Termination of her parental rights was affirmed in an unpublished opinion by our court of appeals. *See In re M.L.*, No. 99–0362, 2000 WL 766121 (Iowa Ct.App.2000). The State, along with Michael's guardian ad litem, then moved to dismiss the other appeal (from the motion ruling) as moot. Although the dismissal was initially granted, a three-judge panel of this court determined on reconsideration that a challenge to the constitutionality of section 232.78 was a justiciable issue of public importance that would otherwise evade appellate review. *See Am. Dog Owners Ass'n v. City of Des Moines*, 469 N.W.2d 416, 417 (Iowa 1991). We treated the appeal as an original petition for writ of certiorari and transferred it to the court of appeals.

The court of appeals sustained the writ in part, and annulled it in part. Finding emergency removals under section 232.78 are subject to the Warrant Clause of the Fourth Amendment, it sustained that part

of the writ which alleged the juvenile court acted illegally by not requiring an application for such order to be made on oath or affirmation. The court annulled the writ, however, to the extent it sought a finding that the juvenile court acted illegally when it held the underlying facts supporting the application need not be reduced to writing.

Both Felicia and the State sought further review. We granted their petitions, and the case is now before us.

## II. Scope of Review.

 Certiorari is a procedure used to test whether a court has exceeded its jurisdiction or otherwise acted illegally. *Wyciskalla v. Iowa Dist. Ct.*, 588 N.W.2d 403, 404 (Iowa 1998). When a constitutional issue is raised, we ordinarily review de novo the evidence bearing on the claim. *Lewis v. Iowa Dist. Ct.*, 555 N.W.2d 216, 218 (Iowa 1996). Here, however, plaintiff contends that Iowa Code section 232.78 is unconstitutional on its face because it authorizes the removal or "seizure" of a child without the issuance of a warrant based on oath or affirmation. *See* U.S. Const. amend. IV; Iowa Const. art. I, § 8. By its nature, a facial challenge asserts that the statute is void for every purpose and cannot be constitutionally applied to any set of facts. *City of Des Moines v. Lavigne*, 257 N.W.2d 485, 486 (Iowa 1977). Thus the specific facts underlying the removal are essentially irrelevant.

 Because statutes enjoy a strong presumption of constitutionality, a party mounting such a challenge may prevail "only upon proof that the act clearly infringes constitutional rights and then only if every reasonable basis for support is negated." *Seeman v. Iowa Dep't of Hu-*

---

3. Although counsel urged the writing requirement as a constitutional imperative, the requirement actually derives from statute. *See* Iowa Code § 808.3.

*man Servs.*, 604 N.W.2d 53, 60 (Iowa 1999).

### III. Issues on Appeal.

■ *A. Applicability of Warrant Clause.* We are confronted with a threshold question concerning Felicia's assertion of a Fourth Amendment claim contesting Michael's removal.[4] The State readily concedes that Felicia's relationship with Michael is a constitutionally protected liberty interest secured by the Due Process Clause of the Fourteenth Amendment. It insists, however, that Felicia can claim no legitimate expectation of privacy rooted in the Fourth Amendment because she was not personally subjected to search or seizure. Nor has she brought this suit in a representative capacity on behalf of her son. Throughout these proceedings Michael has been represented by a guardian ad litem who has advocated removal and opposed Felicia's position.

The Fourth Amendment provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The United States Supreme Court has long held that the right to be protected from unreasonable searches and seizures is a personal one and cannot be asserted vicariously. *Minnesota v. Carter*, 525 U.S. 83, 87–88, 119 S.Ct. 469, 472, 142 L.Ed.2d 373, 379 (1998); *Alderman v. United States*, 394 U.S. 165, 174, 89 S.Ct. 961, 966–67, 22 L.Ed.2d 176, 187 (1969); *accord State v. Ortiz*, 618 N.W.2d 556, 559, (Iowa 2000); *State v. Brown*, 612 N.W.2d 104, 108 & n. 2 (Iowa Ct.App.2000). While older cases refer to such a personal right as "having standing" to assert a Fourth Amendment violation, more recent cases frame the issue in terms of having a legitimate expectation of privacy protected by the Fourth Amendment. *See Carter*, 525 U.S. at 87–88, 119 S.Ct. at 472, 142 L.Ed.2d at 379.

Felicia asserts that the State violated *her* Fourth Amendment right to be free from an unreasonable search and seizure when authorities removed Michael pursuant to an ex parte order issued on the basis of facts given without oath or affirmation, some of which were not reduced to writing. The amendment's language clearly provides, however, that people shall be secure in their "persons, houses, papers, and effects." Although Felicia argues—with substantial justification—that a child is more precious than houses, papers or effects, we are aware of no court that has applied the Fourth Amendment to redress the interest that Felicia claims for herself in these circumstances.

Numerous federal courts have recognized parents' rights under 42 U.S.C. § 1983 to vindicate—in a representative capacity—the constitutional interests of their children whose removal from their custody was accomplished without warrant, court order or, in some cases, any finding of probable cause. These cases uniformly recognize that the seized children, not their parents, have privacy interests protected by the Fourth Amendment. *See, e.g., Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th Cir.2000) (distinguishing seized child's Fourth Amendment rights from Fourth Amendment rights of

---

**4.** Unless otherwise noted, references to the federal constitution apply equally to the corre- sponding provisions of the Iowa Constitution.

custodian whose home was searched); *Wallis v. Spencer*, 202 F.3d 1126, 1137 n. 8 (9th Cir.2000) ("Because only the children were subjected to a seizure, their claims should properly be assessed under the Fourth Amendment."); *Tenenbaum v. Williams*, 193 F.3d 581, 601–02 & n. 13 (2d Cir.1999), *cert denied*, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000) (same); *Malik v. Arapahoe County Dep't of Soc. Servs.*, 191 F.3d 1306, 1316 n. 6 (10th Cir.1999) ("parents may assert their children's Fourth Amendment rights on behalf of their children") (citing *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir.1997)); *Hollingsworth*, 110 F.3d at 738 (removal of child did not violate *parent's* right to be free from unreasonable seizures); *van Emrik v. Chemung County Dep't of Soc. Servs.*, 911 F.2d 863, 867 (2d Cir.1990) (parents' liberty interest in care and custody of child distinguished from child's Fourth Amendment interest in bodily integrity); *Donald v. Polk County*, 836 F.2d 376, 384 (7th Cir.1988) (noting that only child, not parents, were object of search or seizure); *Tenenbaum v. Williams*, 862 F.Supp. 962, 973–74 (E.D.N.Y.1994) (although seizure of child implicates *her* Fourth Amendment rights, same may not be said of parents, neither of whom were subject to search or seizure).

We are aware of only one case implying a contrary view, *J.B. v. Washington County*, 127 F.3d 919 (10th Cir.1997). Despite a conclusion that a mother "may not assert a derivative or vicarious claim based on [a child's] Fourth Amendment injuries," the federal appeals court nevertheless suggested in dicta that a mother might maintain a separate claim "alleging her own distinct injuries as a result of the seizure" of her daughter. *J.B.*, 127 F.3d at 928. Without elaborating on the scope of such a remedy, the court bypassed the issue, reasoning the mother's standing to assert a *Fourteenth* Amendment violation assured

her of the right to full compensation for any constitutional harm sustained. *Id.* We note the court's discussion on this point appears to contradict its earlier observation in *Hollingsworth* that a *child's* removal does not violate a *parent's* Fourth Amendment rights. *Hollingsworth*, 110 F.3d at 738. We further note that the *Hollingsworth* position was recently confirmed by the court in *Malik*, 191 F.3d at 1316 n. 6.

We are convinced that the case before us fits none of the cases rooted in the Fourth Amendment. Felicia makes no claim that the court's removal order, issued in accordance with Iowa Code section 232.78, resulted in a search or seizure of *her* person or property. And, unlike the many cases cited above, she does not purport to urge Michael's Fourth Amendment interest in a representative capacity. Their interests are simply not the same. The juvenile court, therefore, did not err when it rejected her challenge to section 232.78 on Fourth Amendment grounds.

■ *B. Due process analysis.* There are two separate components of Felicia's due process claim. First, she seems to allege that Fourteenth Amendment due process specifically incorporates the Fourth Amendment, thereby requiring any application for an ex parte removal order to be made in writing on oath or affirmation. Second, she claims these safeguards are required by Fourteenth Amendment procedural due process. The State, conceding Felicia's liberty interest in her relationship with her son, argues that the pre- and post-removal procedures contained in the juvenile code provide sufficient safeguards to comport with both federal and state due process requirements. We agree.

■ Both the United States and Iowa Constitutions provide that "no person shall

be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. XIV; Iowa Const. art. I, § 9. It is well-established that procedural due process "imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the ... Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 901, 47 L.Ed.2d 18, 33 (1976). Thus any due process inquiry prompts a two-step process. First, the court must determine if the deprivation implicates a liberty or property interest. *In re A.M.H.*, 516 N.W.2d 867, 870 (Iowa 1994). If so, the court must then decide what process is due the specific interest at issue. *Id.*

■ Here the private interest at stake is Felicia's parental relationship with Michael. The United States Supreme Court has consistently recognized that a parent's "care, custody, and control" of a child is a fundamental liberty interest given the greatest possible protection. *Troxel v. Granville*, 530 U.S. 57, 65–66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56–57 (2000) (plurality opinion); *Stanley v. Illinois*, 405 U.S. 645, 651–52, 92 S.Ct. 1208, 1212–13, 31 L.Ed.2d 551, 558–59 (1972). A parent's interest in preserving family relationships is best protected by the Due Process Clause. *Alsager v. Iowa Dist. Ct.*, 406 F.Supp. 10, 21–22 (S.D.Iowa 1975), *aff'd in part*, 545 F.2d 1137 (8th Cir.1976).

■ The Supreme Court has also recognized that a parent's right to the care and custody of a child is reciprocated by the child's liberty interest in familial association, likewise protected by the Due Process Clause. *See Lehr v. Robertson*, 463 U.S. 248, 256, 103 S.Ct. 2985, 2990–91, 77 L.Ed.2d 614, 623 (1983) (noting reciprocal nature of interest); *Moore v. City of East Cleveland*, 431 U.S. 494, 503–05, 97 S.Ct. 1932, 1937–39, 52 L.Ed.2d 531, 539–41

(1977) (noting the private realm of family relationships); *Wallis*, 202 F.3d at 1136 ("Parents and children have a well-elaborated constitutional right to live together without governmental interference."). Thus Michael also has a protected liberty interest in his relationship with Felicia. The State may only interfere with these liberty interests after providing both Michael and Felicia due process of law.

■ Turning to the second prong of the due process inquiry, we must ask what process is due these particular liberty interests. That determination turns on a balancing of the three factors articulated in *Mathews:* (1) The private interest that will be affected by the State's actions; (2) the State's interest; and (3) the risk that the current procedure will lead to an erroneous deprivation of the interests at stake and the probable value, if any, of additional or different procedural safeguards. *See In re A.M.H.*, 516 N.W.2d at 870. The balancing of these factors reveals that due process is a flexible concept, demanding only such procedural protections as are required by the particular facts and interests at issue. *Id.* Some opportunity for hearing, however, is generally regarded as a minimum requirement. *Id.*

Given the fundamental liberty interests implicated by the disruption of a parent-child relationship, two additional factors become important: the degree of deprivation and the deprivation's possible length. *See Mathews*, 424 U.S. at 341, 96 S.Ct. at 906, 47 L.Ed.2d at 37. These two factors are interrelated here because, although the court eventually terminated Felicia's parental rights, she still challenges Michael's initial removal. Plainly the degree of deprivation, as measured by separation of mother and child, is great. The length of deprivation, however, cannot be fairly measured by the ultimate separation resulting in this case. This court has long declined

to " 'equate the consequences of a CINA proceeding with those of parental termination.' " *See In re A.M.H.,* 516 N.W.2d at 871 (quoting *In re L.K.S.,* 451 N.W.2d 819, 822 (Iowa 1990)). The length of any temporary removal pursuant to an ex parte order under section 232.78 is, at most, ten days. *See* Iowa R. Juv. P. 4.6.

Turning to the State's interest, it bears the heavy responsibility of " 'assur[ing] that every child within its borders receives proper care and treatment....' " *In re A.M.H.,* 516 N.W.2d at 871 (quoting *In re I.L.G.R.,* 433 N.W.2d 681, 689 (Iowa 1988)). Its duty is triggered, as in this case, when a parent—perhaps through no fault of her own—fails to adequately provide for her child. *Id.* Prompt attention to the duty is demanded when the health or safety of the child is at risk.

Our analysis of these competing interests ultimately turns on balancing the risk of error in the procedures already built into section 232.78's removal process with the probable value of additional safeguards. Felicia contends that the potential for error in the current procedures is high. She asserts that, to pass constitutional muster, the facts which form the basis for issuing a removal order must be given on oath or affirmation, and in writing, to counter those risks.

Felicia rightly asserts that an oath or affirmation requirement would "create an incentive for the truth." It is also true, as Felicia suggests, that a writing requirement would provide a record from which to review the issuing judge's actions. Requiring either procedure in this case, she argues, may have lessened the likelihood of exaggeration or improper influence that she perceives to be at the heart of the removal order at issue.

The purported need for these additional requirements, however, must be weighed against the fact that ex parte removal orders are not, in and of themselves, reviewed. While the court is statutorily obligated to hold a hearing following the removal, the purpose of the hearing is limited to a determination of whether removal should continue. Iowa Code § 232.95(1); *In re A.M.H.,* 516 N.W.2d at 871 ("[The court] cannot go back in time and restore custody based on alleged errors in the initial removal order."). As the court of appeals correctly noted here, what the judge who issued the ex parte order knew when the order was signed does not necessarily affect the determination of whether the removal should continue. The purpose of the subsequent hearing is not to second-guess the reasons given for the initial removal, but to assess whether the removal should continue. While the reasons underlying both decisions may be identical, the proof supporting continued removal rests on evidence adduced at the hearing, not on the ex parte application. We think this fact minimizes the purported value of requiring a written record of the facts supporting an application for an ex parte removal order.

Of course the fact that an ex parte removal order is not reviewed necessarily increases the worth of testimony given under oath or affirmation. Requiring that information to be given on oath or affirmation would indeed discourage exaggeration or outright lies. It would also pose little additional burden, assuming the applicant would already be presenting the information to the judge. However, the record before us contains no proof that either this DHS worker or DHS workers in general furnish false or misleading information as the basis for ex parte orders. And while the DHS worker would likely be a witness in the post-removal hearing, the purpose of that hearing is to elicit facts concerning the need for *continued* placement, not to challenge the propriety of the initial re-

moval. The focus of the hearing is not exclusionary in nature. Unlike a hearing to suppress evidence gathered pursuant to a criminal warrant, the post-removal hearing does not purport to undo the past; it establishes the future course of the proceedings.

On balance, we cannot say that the protections in place in section 232.78 deprive litigants, such as Felicia, of due process. Given the emergency nature of temporary removal applications, a reasonably prompt post-removal hearing meets the twin goals of protecting the child's safety while preserving the parent's liberty interest. The legislature could reasonably err on the side of less formality where the safety of children is at issue. Moreover, it is not unreasonable for the legislature to entrust to juvenile judges the important task of weighing the credibility of applicants for emergency orders affecting our state's most vulnerable citizens.

In sum, we have no basis to find section 232.78 unconstitutional on its face. We therefore concur in the juvenile court's judgment in this matter and annul the writ of certiorari.

**WRIT ANNULLED.**