# IN THE COURT OF APPEALS OF IOWA

No. 17-1585
Filed January 24, 2018

**IN THE INTEREST OF T.J.,**
**Minor Child,**

**J.J., Father,**
         Appellant,

**K.J., Mother,**
         Appellant.
_____

Appeal from the Iowa District Court for Cass County, Amy L. Zacharias, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child.  **AFFIRMED ON BOTH APPEALS.**

Karen K. Emerson Peters of Karen K. Emerson Peters Law Office, Atlantic, for appellant father.

Justin R. Wyatt of Woods & Wyatt, P.L.L.C., Glenwood, for appellant mother.

Thomas J. Miller, Attorney General, and Ana Dixit, Assistant Attorney General, for appellee State.

Karen L. Mailander of Mailander Law Office, Anita, guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and Bower, JJ.

**VOGEL, Presiding Judge.**

The mother and father separately appeal from the district court's order terminating their parental rights to their child, T.J. Both the mother and father assert the State offered insufficient proof to terminate their parental rights under Iowa Code section 232.116(1)(h) (2016), termination was not in the child's best interest, and they should have been granted an additional six months to work towards reunification.[1] Because the child could not be returned to either parent, termination was in the child's best interests, an additional six months would not result in reunification, and there are no impediments to termination, we affirm.

## I.    Background Facts and Proceedings

The child, born May 2016, came to the attention of the Iowa Department of Human Services (DHS) following concerns for her wellbeing and safety. Both the mother and the father have mental-health diagnoses, and the father was not taking his prescribed medications, resulting in anger issues. While the DHS was in the process of filing a CINA petition, a referral from the mother's therapist arrived at the DHS after the mother indicated she did not want to be around her baby, wanted

---

[1] The father also asserts his constitutional rights were violated because the DHS removed the child without a warrant or probable cause. We find the father failed to preserve error because the issue was not raised at the district court level. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) (stating that the rule that arguments must first be raised in the trial court applies to child-in-need-of-assistance and termination-of-parental-rights cases). To the extent the father believes the issue was properly before the district court, we note the court failed to rule on the issue and the father failed to file a motion under Iowa Rule of Civil Procedure 1.904(2), seeking additional findings pursuant to the issue. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012) (holding when a district court fails to rule on an issue properly raised by a party, the party who raised the issue must file a motion requesting a ruling in order to preserve error for appeal). Therefore, the issue is waived. Moreover, our supreme court has found ex parte temporary removals do not violate a parent's due process rights when conducted pursuant to Iowa Code section 232.78. *See F.K. v. Iowa Dist. Ct.,* 630 N.W.2d 801, 810 (Iowa 2001).

to run away, and was pleading for help. On July 8, 2016, the child was temporarily removed and placed with a foster family; she was adjudicated a child in need of assistance on August 17.

The child remained with the same foster family throughout these proceedings. The mother and father were offered services to correct the circumstances that led to the adjudication, such as medication management, mental-health services, and money management. Some of the services were completed, but during visitations and other meetings with the parents, the DHS was concerned the child was not being adequately fed, the parents continued to smoke or arrived at meetings smelling like smoke after being told not to, and the father had not progressed with controlling his anger issues. The mother and father eventually revoked releases of their medical information from Southwest Iowa Mental Health. The DHS indicated the mother and father had not progressed in their care of the child and, as a result, they did not progress to overnight or even unsupervised visits with the child.

The April 21, 2017 permanency review order continued to find a lack of progress by the mother and father in spite of their receipt of services. Thereafter, the State filed a petition to terminate the mother and father's parental rights, which came on for hearing on August 30. The court issued its order on September 20, 2017, terminating the mother's and father's parental rights.

## II.    Standard of Review

We review the termination of parental rights proceedings de novo, giving weight to the factual findings of the district court while not being bound by them. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

### III. Statutory Grounds

The mother and father both assert the State did not prove by clear and convincing evidence their parental rights should be terminated under Iowa Code section 232.116(1)(h), specifically only challenging the fourth element, which requires the State establish, "[t]he child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time."

As to the father, despite his interaction with T.J. during visits and his participation in recommended mental-health services, the father readily admits and clearly demonstrated he gets angry easily and then walks away from situations as a coping mechanism. In one instance, the father was so angry at a supervised visit that caseworkers felt the need to call the police. Other times, the father's anger concerns the mother, even though she claims she does not fear physical violence from him. Despite the mother's belief and the father's contention that he would never get angry with the child, the father's inability to control his anger when he is around the child creates an unsafe environment for the child. The record is replete with examples of his anger and inappropriate behavior stemming from mental-health issues. Thus, there is clear and convincing evidence that the child could not be returned to the father at the time of the termination hearing because of his lack of progress in controlling his anger issues, coupled with his mental-health issues and the threat his uncontrolled anger poses to the child.

The father also requests an additional three to six months to accomplish reunification with the child. *See* Iowa Code § 232.104(2)(b) (stating a court may authorize a six-month extension if it determines the need for removal would not exist at the end of the six-month period). The record does not support that

additional time is appropriate in this situation because the child has been removed for more than one year. During that time, the father's anger has remained problematic; he continues to storm out of meetings or get angry with the mother in the presence of the child. It is not evident that the father will be able to adequately address his mental-health issues even if given additional time. Thus, any additional time would not be beneficial to the child, as she needs stability.

Although the mother also has mental-health issues, she contends she does not have the same anger issues as the father and there is not clear and convincing evidence the child cannot be returned to her care. The mother also requests an additional six months to work towards reunification with the child after her recent declaration she intends to leave the father.

The court's concern is not the mother's anger but her ability to protect the child when the father lets his anger overcome him, in addition to the mother's mental-health issues and continued inability to place the needs of the child above her own. Two months before the hearing, the mother was warned the termination ruling may rest on her choosing between the child and the father. However, the mother chose to say with the father throughout the duration of this termination, illustrating an inability to prioritize the needs of her child. At the termination hearing, the mother expressed, for the first time, her intention to try to reunify with the child without the father. The court appropriately found this to be a last minute effort to avoid termination. Because the mother did not distance herself from the father, coupled with her own unresolved mental-health issues, there is clear and convincing evidence the child could not be returned to the mother at the time of the termination hearing.

As to her request for additional time, we have no confidence, based on the record before us that the mother's situation would be so improved such that the child would then be able to be safely returned to her care. Her claim that she suddenly intended to leave the father was not viewed as a sincere assertion by the court, and she provided the court with no indication she placed the child's needs over her own. Thus, additional time would not be beneficial for the child who needs permanency and stability in her life; we agree with the district court. *See id.*

## IV. Best Interests

Both parents assert it is not in the child's best interests to terminate their parental rights. In determining "whether to terminate parental rights based on a particular ground, we must give primary consideration to the child's safety . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

The child is safe and thriving in her current placement. She has been with the same foster family since July 8, 2016, and the mother and father are no closer to having overnight or even unsupervised visits with her. The DHS worker testified the parents have not been able to progress in the services offered such that the child could be protected in a safe environment if returned to either parent's care. The child deserves stability and safety, thus, termination is in the best interests of the child to further her long-term nurturing and growth and to meet her physical, mental, and emotional needs.

## V. Permissive Factors

If the statutory best-interests framework supports termination of parental rights, the court must consider if any statutory considerations set forth in section 232.116(3) should serve to preclude termination. *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010). Both the mother and the father assert they have a strong bond with the child that should preclude termination. *See* Iowa Code § 232.116(3)(c).

The mother contends she maintained a strong bond with the child by consistently participating in visitations and by taking an active role in parenting. She also asserts she maintained this bond despite the DHS's decision to not move visitations past supervised visits. The father also asserts he is bonded to the child because he consistently participated in visits and was actively involved in her care during the visits.

Despite the mother and father's assertions, the record reflects a bond that should impede termination does not exist. Any bond that exists between the mother and father and the child in this case is limited considering the child's young age and the time she has spent out of their care. The child was removed from the parent's care when she was only two months old and has been out of the parents' care for approximately eighteen months. The DHS caseworker testified the foster family reports the child is fussy and extremely tired after returning from visits. In addition, the caseworker testified the child is very bonded to the foster family, not the mother or the father. We agree with the district court; no impediments to termination appear in this record that would outweigh termination.

## VI. Conclusion

Because the child could not be returned to either parent, termination was in the child's best interests, an additional six months would not result in reunification, and no impediments to termination appear in the record, we affirm.

**AFFIRMED ON BOTH APPEALS.**